1
**SCHEPER KIM & HARRIS LLP**
David C. Scheper (State Bar No. 120174)

2
dscheper@scheperkim.com
Gregory A. Ellis (State Bar No. 204478)

3
gellis@scheperkim.com
601 West Fifth Street, 12th Floor

4
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655

5
Facsimile:  (213) 613-4656

6

7
Attorneys for Defendants Igal Shidlovsky, Guenter Jaensch,
Daniel Tsui and Baruch Fischer

8

9
**UNITED STATES DISTRICT COURT**

10
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

| 12 13 | IN RE MRV COMMUNICATIONS, INC. DERIVATIVE LITIGATION. | Master File No. 2:08-cv-03800-GAF-RCx |
|---|---|---|
| 14 15 16 17 18 19 | This Document Relates to:  ALL ACTIONS. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**  **[Omnibus Request for Judicial Notice Filed Concurrently]** |
| 20 21 22 23 | | **Date:** **September 13, 2010** **Time:** 9:30 a.m. **Ctrm:** 740  Roybal Federal Building 255 East Temple Street Los Angeles, CA 90012 |

24

25

26

27

28

1
**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on September 13, 2010, at 9:30 a.m., or as

3    soon thereafter as the matter can be heard, in Courtroom 740 of the above-entitled

4    Court, located at 255 East Temple Street, Los Angeles, California 90012,

5    Defendants Igal Shidlovsky, Guenter Jaensch, Daniel Tsui and Baruch Fischer

6    hereby will and do move for an order dismissing this action, pursuant to Fed. R. Civ.

7    P. 12(b)(6).

8    The motion is made on the grounds that the Complaint fails to state a claim on

9    which relief can be granted as to any of the defendants named above, and in

10   particular, that the Complaint fails to plead an actionable state of mind with the

11   particularity required under the Private Securities Litigation Reform Act of 1995

12   (the "PSLRA").

13   This application is based on the following Memorandum of Points and

14   Authorities, the concurrently-filed Omnibus Request for Judicial Notice, the

15   pleadings on file, and such other evidence and argument as the Court may receive.

16   This motion is made after the conference of counsel pursuant to Local Rule 7-

17   3, which took place on July 14, 2010.

18

19   DATED: July 19, 2010               Respectfully submitted,

20                                      SCHEPER KIM & HARRIS LLP
21                                      DAVID C. SCHEPER
                                        GREGORY A. ELLIS
22

23                                      By:  _____/S/ David C. Scheper_____
                                             David C. Scheper
24                                           Attorneys for Defendants Igal Shidlovsky,
                                             Guenter Jaensch, Daniel Tsui and Baruch
25                                           Fischer

26

27

28
                                             2
     **NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,**
     **GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  RELEVANT FACTUAL ALLEGATIONS .................................................. 2

   A.  General Allegations.............................................................. 2

   B.  Allegations Relating to the Director Defendants................................ 4

III.  ARGUMENT ...................................................................................... 6

   A.  Legal Standards on Motion to Dismiss................................................. 6

   B.  Plaintiffs' Federal Claims Are Fatally Deficient ................................. 6

      1.  Plaintiffs Concede Most of the Acts Alleged in the
          Complaint Are Time-Barred.................................................. 6

      2.  Plaintiffs Fail to Plead Scienter Under the PSLRA.................... 7

         (a)  Standards for Pleading Scienter ................................. 7

         (b)  Plaintiffs' Allegations, Standing Alone, Do Not
              Create a Strong Inference of Scienter ............................ 9

         (c)  The Complaint Also Fails Under a "Holistic"
              Analysis ................................................................ 13

      3.  Plaintiffs Cannot Properly Plead Reliance in the Context
          of This Derivative Suit...................................................... 14

         (a)  Section 14 Claim ............................................... 15

         (b)  10b-5 Claim ...................................................... 16

      4.  Plaintiffs' Section 29(b) Claim Similarly Fails...................... 17

         (a)  The Option Contracts Themselves are Not
              "Prohibited Transactions" ....................................... 18

         (b)  Plaintiffs Fail to Establish Scienter ............................ 18

i

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.   Plaintiffs' State Law Claims Are Similarly Deficient ....................... 18

    1.   Plaintiffs' Claim For Breach of Fiduciary Duty Sounds In Fraud, But Lacks Specificity. .................................................... 19

    2.   Plaintiffs' Claims for "Gross Mismanagement," "Abuse of Control," and "Constructive Fraud" are All Duplicative of the Claim for Breach of Fiduciary Duty and Must Be Dismissed ................................................................... 20

    3.   Plaintiffs Cannot Establish a Claim for Corporate Waste ........ 21

    4.   The Claim for "Unjust Enrichment" Fails Because the Parties' Relationship Was Governed by Contract .................. 21

    5.   "Rescission" and "Accounting" are Remedies, Not Separate Claims for Relief ........................................................ 22

D.   Plaintiffs Have Not Verified the Complaint As Required Under Rule 23.1 .......................................................................................... 23

E.   The Complaint Should Be Dismissed With Prejudice ....................... 24

IV.   CONCLUSION ............................................................................................ 24

ii

1

# TABLE OF AUTHORITIES

**Page**

2

## Federal Cases

3

*Adelphia Recovery Trust v. Bank of America, N.A.,*
   624 F. Supp. 2d 292 (S.D.N.Y. 2009) ...................................................... 19

4

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ............................................................................... 6

5

*Banks v. Appleton Papers, Inc.,*
   2005 WL 5602039, *1 n.3 (S.D. Ohio Mar. 28, 2005) ........................... 23

6

*Berckeley Investment Grp., Ltd. v. Colkitt,*
   455 F.3d 195 (3d Cir. 2006) .............................................................. 17, 18

7

*City of Westland Police and Fire Retirement Sys. v. Sonic Solutions,*
   2009 WL 942182 (N.D. Cal. 2009) .................................................... 7, 12

8

*CTS Corp. v. Dynamics Corp. of America,*
   481 U.S. 69 (1987) ................................................................................... 19

9

*Desaigoudar v. Meyercord,*
   223 F.3d 1020 (9th Cir. 2000) ................................................................. 15

10

*Developers Diversified Realty Corp. v. Vidalakis,*
   2008 WL 5705708, at *15 (N.D. Ohio 2008) .......................................... 23

11

*Durning v. Citibank Int'l,*
   990 F.2d 1133 (9th Cir. 1993) ................................................................... 7

12

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
   594 F.3d 783 (11th Cir. 2010) ................................................................. 18

13

*Escareno v. Bangs,*
   2007 WL 4287273, *1 (E.D. Wash. Dec. 4, 2007) ................................. 23

14

*Falkowsky v. Imation Corp.,*
   309 F.3d 1123 (9th Cir. 2002) ................................................................... 7

15

*Glenbrook Cap. Ltd. P'ship v. Kuo,*
   2007 WL 2601260, at *13 (N.D. Cal. Sept. 6, 2007) ............................. 24

16

*In re Affiliated Computer Services Derivative Litig.,*
   540 F. Supp. 2d 695 (N.D. Tex. 2007) ............................................. 11, 12

17

*In re Asyst Tech, Inc. Deriv. Litig.,*
   2008 WL 2169021, at *5 (N.D. Cal. 2008) ............................................... 7

18

*In re Atmel Corp. Deriv. Litig.,*
   2007 WL 2070299, at *10 (N.D. Cal. 2007) ........................................... 21

19

*In re Atmel Corp. Deriv. Litig.,*
   2008 WL 2561957, at *12 (N.D. Cal. 2008) ........................................... 19

20

*In re Brocade Communications Sys., Inc. Derivative Litigation,*
   615 F. Supp. 2d 1018 (N.D. Cal. 2009) ............................................. 7, 17

21

*In re Daou Systems, Inc. Securities Litig.,*
   411 F.3d 1006 (9th Cir. 2005) ................................................................. 12

22

*In re Ditech Networks, Inc. Deriv. Litig.,*
   2008 WL 820705 *9 (N.D. Cal. Mar. 26, 2008) ..................................... 22

23

*In re Hansen Natural Corp. Securities Litig.,*
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................... 9, 10

24

*In re Juniper Networks, Inc. Sec. Litig.,*
   542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..................................................... 9

25

*In re Maxim Integrated Prods., Inc. Derivative Litig.,*
   574 F. Supp. 2d 1046 (N.D. Cal. 2008) ..................................................... 3

26

*In re MIPS Techs., Inc. Sec. Litig.,*
   542 F. Supp. 2d 968 (N.D. Cal. 2008) ..................................................... 23

27

28

iii

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

*In re Silicon Graphics, Inc. Securities Litig.,*
   183 F.3d 970, 986 (9th Cir. 1999)................................................................13

*In re Silicon Storage Technology, Inc. Shareholder Derivative Litig.,*
   2009 WL 1974535 (N.D. Cal. 2009)......................................................9, 10

*In re Splash Tech. Holdings, Inc. Sec. Litig.,*
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ......................................................10

*In re U.S. Office Prods. Co. Sec. Litig.,*
   251 F. Supp. 2d 77 (D.D.C. 2003)..............................................................22

*In re VeriSign, Inc. Deriv. Litig.,*
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........................................11, 12, 16

*In re Wet Seal, Inc. Securities Litig.,*
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)............................9, 10, 12, 14

*In re Zoran Corp. Deriv. Litig.,*
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ..................................................20, 22

*McGowan Investors LP v. Frucher,*
   481 F. Supp. 2d 405 (E.D. Pa. 2007) ..........................................................18

*Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.,*
   42 F. Supp. 2d 423 (D.Del. 1999)...............................................................21

*Rogosin v. Steadman,*
   65 F.R.D. 365 (S.D.N.Y. 1974)..................................................................23

*Rudolph v. UTStarcom,*
   2008 WL 1734763 (N.D. Cal. 2008)............................................................7

*Rudolph v. UTStarcom,*
   560 F. Supp. 2d 880 (N.D. Cal. 2008) ........................................................13

*Shaffer v. Heitner,*
   433 U.S. 186, 215 n.44 (1977) ...................................................................19

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998)....................................................................24

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
   552 U.S. 148 (2008) .....................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   501 U.S. 308 (2007) .....................................................................................8

*Transocean Grp. Holdings Pty. Ltd. v. South Dakota Soybean Processors, LLC,*
   663 F. Supp. 2d 731 (D. Minn. 2009) .........................................................20

*United States v. Reyes,*
   577 F.3d 1069 (9th Cir. 2009).....................................................................18

*Va. Bankshares v. Sandberg,*
   501 U.S. 1083 (1991) ..................................................................................15

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003).........................................................6, 19, 20

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009)................................................................passim

## State Cases

*Dalton v. Ford Motor Co.,*
   2002 WL 338081 (Del. Super.Ct. Feb.28, 2002) ........................................21

*Glazer v. Zapata Corp.,*
   658 A.2d 178 (Del. Ch. 1993)......................................................................21

*In re Citigroup Inc. Shareholder Deriv. Litig.,*
   964 A.2d 106 (Del. Ch. 2009) .....................................................................20

*Italo-Petroleum Corp. of America v. Hannigan,*
   14 A.2d 401 (Del. 1940)..............................................................................20

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

*Lewis v. Vogelstein,*
    699 A.2d 327 (Del. Ch. 1997)...................................................................21
*Parfi Holding AB v. Mirror Image Internet, Inc.,*
    794 A.2d 1211 (Del. Ch. 2001), rev'd on other grounds, 817 A.2d 149
    (Del. 2002)...................................................................................................20
*Ryan v. Gifford,*
    918 A.2d 341 (Del. Ch. 2007)...................................................................22
*Schiff v. Am. Assoc'n of Retired Persons,*
    697 A.2d 1193 (D.C. 1997).......................................................................21
*Wood v. Coastal States Gas Corp.,*
    401 A.2d 932 (Del. 1979)..........................................................................22

**Federal Statutes**

15 U.S.C. § 78j(b)..............................................................................................8
15 U.S.C. § 78n(a)............................................................................................15
15 U.S.C. § 78u-4(b)(1)......................................................................................8
15 U.S.C. § 78u-4(b)(2)......................................................................................8
15 U.S.C. § 78u-4(b)(4)....................................................................................15
28 U.S.C. § 1406(a).................................................................................1, 4, 20
28 U.S.C. § 1658(b)(1)(2)..................................................................................6
28 U.S.C. § 1746..............................................................................................23

**Federal Rules**

Federal Rule of Civil Procedure 9(b) ...............................................................6
Federal Rule of Civil Procedure 12(b)(6)..................................................passim

**Federal Regulations**

17 C.F.R. § 240.10b-5 .......................................................................................8
17 C.F.R. § 240.14a-9 ......................................................................................15

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Igal Shidlovsky, Guenter Jaensch, Daniel Tsui and Baruch Fischer (collectively, the "Director Defendants")[1] respectfully submit this Memorandum of Points and Authorities in support of their motion to dismiss the Amended Consolidated Verified Complaint (the "Complaint") filed by Plaintiffs the Rubin Profit Sharing Plan, the Rubin DB Plan and Donald Gautreaux (collectively, "Plaintiffs").

I.      **INTRODUCTION**

Although lengthy, Plaintiffs' Complaint is fatally lacking in specifics. Plaintiffs attempt to allege a years-long scheme of backdating MRV's stock options, which enveloped MRV's board and several current and former directors. But in order to plead their federal law claims, Plaintiffs must satisfy the requirements of the Private Securities Litigation Reform Act (the "PSLRA"), and allege specific facts for *each* defendant, for *each* alleged wrongful act, that would give rise to a strong inference that each defendant acted with a wrongful state of mind.  Plaintiffs do not come close to meeting this standard.  Rather than setting forth specific facts, the Complaint relies instead on undifferentiated, cut-and-pasted allegations regarding each purported misstatement that shed no light whatsoever on what each particular defendant knew in connection with the grant of options, and in connection with MRV's related financial statements.  For this reason alone, the

_____

[1] While the present motion is brought specifically on behalf of the Director Defendants, it addresses legal issues that are common to all the individual defendants in this action.  It is anticipated that the other individual defendants will file motions to dismiss as well, joining this motion to the extent the common legal issues apply, and raising any additional legal issues specific to that individual defendant.  Similarly, the concurrently-filed Omnibus Request for Judicial Notice includes materials relevant to this motion and the other individual defendants' motions to dismiss.

1

1  Complaint must be dismissed.

2         However, the Complaint suffers from additional fatal problems.  Most

3  glaringly, because this is a derivative action, Plaintiffs must plead that *MRV itself*

4  relied on the defendants' alleged false statements.  Plaintiffs do not and cannot do

5  so, based on their allegations that the entire MRV board and upper management

6  were purportedly aware of the scheme, and because they do not identify any MRV

7  decisionmaker who acted upon the defendants' alleged falsehoods.

8         Defendants' state-law claims fare no better.  Most of them are not even

9  recognized claims under Delaware law, instead being duplicative of other claims or

10  potential remedies.  The two claims that are recognized—unjust enrichment and

11  breach of fiduciary duty—fail.  The unjust enrichment claim fails because such a

12  claim cannot be brought under Delaware law where, as here, the parties'

13  obligations are governed by a contract; the breach of fiduciary duty claim fails

14  because it is grounded in fraud, yet provides no specificity for each defendant.

15  Accordingly, the Complaint must be dismissed.

16  II.    **RELEVANT FACTUAL ALLEGATIONS**

17         A.    **General Allegations**

18         MRV is a Delaware corporation headquartered in Chatsworth, California.

19  (Compl. ¶ 21.)  It is a leading worldwide supplier of communications equipment

20  and services to carriers, governments and enterprises.  (*Id.* ¶ 1.)  On June 6, 2008,

21  MRV announced that "as a result of the recent discovery and preliminary analysis

22  by management of information related to the company's stock option practices," it

23  planned to restate its financial statements for the years ended December 31, 2002-

24  2008.  (*Id.* ¶ 5.)  Plaintiffs allege that the restatement was necessary as a result of a

25  broad-based "backdating" scheme, in which the company recorded options on a

26  date other than the actual grant date, thus reflecting a lower exercise price than the

27

28

2

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1    share price on the actual grant date.  (*Id.* ¶¶ 2-3.)[2]

2    On June 10, 2008, four days after MRV's announcement that it intended to

3    restate its financial statements and while MRV was still in the beginning stage of

4    its internal investigation, Plaintiffs filed the first derivative action in the Central

5    District of California asserting claims against MRV, its Chief Technology Officer

6    and former chairman Shlomo Margalit; CEO Noam Lotan; former CFOs Shay

7    Gonen and Guy Avidan; Vice President of Marketing Near Margalit; Controller

8    Michael Blust; and directors Igal Shidlovsky, Guenter Jaensch, Daniel Tsui,

9    Baruch Fischer, and Harold W. Furchgott-Roth (collectively, the "Individual

10   Defendants").  On August 18, 2008 another federal derivative action—*Gautreaux*

11   v. *Margalit et al.*, CV 08-05382 GAF (RCx) ("Gautreaux")—was filed against

12   MRV.  On December 1, 2008 the *Gautreaux* action was consolidated with this

13   action.

14   In their consolidated Complaint, filed on January 30, 2009, Plaintiffs,

15   purportedly on behalf of MRV, allege that the Individual Defendants breached their

16   fiduciary duties of loyalty and good faith by failing to "exercise due care and

17   diligence in the management and administration of the affairs of the Company, as

18   well as in the use and preservation of its property and assets."  (*Id.* ¶ 65.)  Plaintiffs

19   contend that "by allowing or by themselves causing the Company to misrepresent

20   its financial results and prospects" the Individual Defendants have breached the

21

22   _____

[2] Importantly, backdating by itself is *not* illegal.  "Backdating may be improper,
23   however, if the practice misleads shareholders. For example, if the grant date of a
      stock option to an employee is backdated to a date when the market price was
24   lower than the market price on the actual grant date, the option would be 'in-the-
      money.' If the company does not record and report a compensation expense as
25   required by GAAP, any subsequently issued financial statement would be
26   misleading."  *In re Maxim Integrated Prods., Inc. Derivative Litig.*, 574 F. Supp. 2d
      1046, 1056 (N.D. Cal. 2008).
27

28

1  duties owed to the Company.  (*Id*. ¶ 66.)  Plaintiffs further allege that, because of

2  their "positions of control and authority as directors and officers of MRV," the

3  Individual Defendants caused MRV to "disseminate false proxy statements and

4  periodic filings with the SEC."  (*Id*. ¶ 62.)

5      Plaintiffs identify MRV's 10-K reports filed from 1996-2008—and related

6  press releases—as the specific instances in which the Defendants allegedly made

7  "false and misleading financial [statements] understating compensation expense,

8  overstating shareholder's equity, and overstating income (or understating loss), net

9  income (or net loss) and earnings (or loss) per share."  (*Id*. ¶ 184.)  Plaintiffs also

10  point to MRV's proxy statements, which they allege were "materially false and

11  misleading and omitted material information about the Company's improper stock

12  option practices, as detailed herein."  (*Id*. ¶ 117.)  They also describe the allegedly-

13  backdated options generally.  (*Id*. ¶¶ 74, 91-111.)  Plaintiffs further allege that the

14  directors generally failed to "exercise reasonable and prudent supervision over the

15  management, policies, practices and controls of the business and financial affairs of

16  MRV." (*Id*. ¶ 64.)

17      B.   **Allegations Relating to the Director Defendants**

18      <u>Shidlovsky</u>:  Plaintiffs allege that Shidlovsky was a director of MRV, a

19  member of the Audit Committee, and a member and chair of the Compensation

20  Committee, between 1997 and the date the Complaint was filed.  (Compl. ¶¶ 31-

21  34.)  Plaintiffs allege that Shidlovsky approved backdated option grants at various

22  board meetings between 1998 and 2005, and that he attended Audit Committee

23  meetings between 1997 and the date the Complaint was filed.  (*Id*.)  Plaintiffs

24  further allege that Shidlovsky accepted backdated options.  (*Id*.)

25      <u>Jaensch</u>:  Plaintiffs allege that Jaensch was a director of MRV, a member of

26  the Compensation Committee, and a member and chair of the Audit Committee,

27  between 1997 and the date the Complaint was filed.  (Compl. ¶¶ 35-38.)  Plaintiffs

28  allege that Jaensch approved backdated option grants at various board meetings

4

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1   between 1998 and 2005, and that he attended Audit Committee meetings between

2   1997 and the date the Complaint was filed.  (*Id.*)  Plaintiffs further allege that

3   Jaensch accepted backdated options.  (*Id.*)

4        Tsui:  Plaintiffs allege that Tsui was a director of MRV between 1999 and

5   the date the Complaint was filed; that he was a member of the Audit Committee

6   between 2002 and the date of filing; and that he was a member of the

7   Compensation Committee between 2004 and the date of filing.  (Compl. ¶¶ 39-42.)

8   Plaintiffs allege that Tsui approved backdated option grants at various board

9   meetings between 1999 and 2005, and that he attended Audit Committee meetings

10  between 2002 and the date of filing.  (*Id.*)  Plaintiffs further allege that Tsui

11  accepted backdated options.  (*Id.*)

12       Fischer:  Plaintiffs allege that Fischer was a director of MRV between 1999

13  and the date the Complaint was filed; and that he was a member of the

14  Compensation Committee between 2004 and the date of filing.  (Compl. ¶¶ 43-45.)

15  Plaintiffs allege that Fischer approved backdated option grants at various board

16  meetings between 1999 and 2005, and that he accepted backdated options.  (*Id.*)

17       Plaintiffs allege that the entire MRV board "administered" the company's

18  compensation plan.  (Compl. ¶ 75.)  Plaintiffs further allege that, as members of the

19  Audit Committee, Messrs. Shidlovsky, Jaensch and Tsui had additional duties,

20  including knowing and discussing the MRV's auditing systems and internal

21  controls; discussing MRV's internal controls with outside auditors; and reporting

22  any improper backdating to outside auditors.  (Compl. ¶¶ 173-176.)  However,

23  Plaintiffs do not allege that any Individual Defendant had specialized knowledge

24  relating to accounting or the specific reporting requirements relating to option

25  grants.

26       In the Complaint, Plaintiffs allege the following claims against the Director

27  Defendants:  (1) Breach of Fiduciary Duty; (2) Violation of Section 14(a) of the

28  Exchange Act and Rule 14a-9 thereunder; (3) Violation of Section 10(b) of the

5

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

Exchange Act and Rule 10b-5 thereunder; (4) Violation of Section 29(b) of the Exchange Act; (5) Accounting; (6) "Abuse of Control;" (7) "Gross Mismanagement;" (8) Constructive Fraud; (9) Corporate Waste; (10) Unjust Enrichment; and (11) Common Law Rescision.  (Compl. ¶¶ 264-312.)

III.    **ARGUMENT**

    A.    **Legal Standards on Motion to Dismiss**

In order to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  In making the plausibility analysis, a district court should first identify and eliminate the conclusory "allegations that are not entitled to the assumption of truth."  *Id.* at 1950-51.  Second, the district court should evaluate the remaining non-conclusory allegations to determine if they are plausible.  *Id.* at 1951

Because Plaintiffs' claims in this action sound in fraud, they must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to identify not only the "who, what, when, where, and how" of the alleged misstatements, but also "what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted, applying Rule 9(b) to state-law claims sounding in fraud).

    B.    **Plaintiffs' Federal Claims Are Fatally Deficient**

        1.    <u>Plaintiffs Concede Most of the Acts Alleged in the Complaint Are Time-Barred</u>

A claim under Section 10(b) of the Exchange Act must be brought within two years from discovery of facts constituting the violation, and in no event more than five years after the violation.  28 U.S.C. § 1658(b)(1)(2).  The five-year limit serves as a statute of repose, not subject to tolling, and runs separately on the date

6

1    of each alleged backdating event.  *See In re Brocade Communications Sys., Inc.*

2    *Derivative Litigation*, 615 F. Supp. 2d 1018, 1035 (N.D. Cal. 2009).[3]  Thus,

3    Plaintiffs' Section 10(b) claim is limited to acts taking place on or after June 10,

4    2003, five years before this action was first filed.  Similarly, a claim under Section

5    14 must be brought no more than three years after the alleged violation.  *See City of*

6    *Westland Police and Fire Retirement Sys. v. Sonic Solutions*, 2009 WL 942182

7    (N.D. Cal. 2009), at *10 (citing *In re Asyst Tech, Inc. Deriv. Litig.*, 2008 WL

8    2169021, at *5 (N.D. Cal. 2008) and *Rudolph v. UTStarcom*, 2008 WL 1734763

9    (N.D. Cal. 2008).)  Thus, Plaintiffs' Section 14 claim is limited to acts taking place

10   on or after June 10, 2005.

11        Plaintiffs briefly acknowledge these time-bars.  (Compl. ¶ 263.)   This short

12   concession, however, fails to illustrate just how little of Plaintiffs' case remains

13   once the time bars are applied.  Specifically, the Complaint alleges only four

14   allegedly-backdated option grants within five years of filing, *none* of which are

15   alleged to have been exercised.  (Compl. ¶ 74, at 28.)  Similarly, the Complaint

16   identifies only five allegedly-misleading Form 10Ks that were issued within the

17   actionable period.  (*Id.* ¶¶ 215-234.)  And the Complaint identifies only three

18   allegedly-false proxy statements within the actionable period.  (*Id.* ¶¶ 155-165.)

19   No other conduct is actionable under these claims.

20              2.     Plaintiffs Fail to Plead Scienter Under the PSLRA

21                   (a)     Standards for Pleading Scienter

22        To state a claim under Section 10(b), Plaintiffs must allege (1) a

23   misrepresentation or the use or employment of any manipulative or deceptive

24   _____

25   [3] *See also Durning v. Citibank Int'l*, 990 F.2d 1133, 1136 (9th Cir. 1993) (noting
     that securities fraud cause of action accrues at the completion of sale of
26   instrument); *Falkowsky v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002)
     (describing grant of an option as a purchase or sale of securities).
27

28

device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Upon the enactment of the PSLRA in 1995, all securities fraud complaints must:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).  Moreover, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (PSLRA requires "that a complaint plead with particularity both falsity and scienter") (internal quotations omitted).

Defining the term "strong inference" under the PSLRA, the Supreme Court held that a securities fraud complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter *cogent and at least as compelling* as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 501 U.S. 308, 324 (2007) (emphasis added).  This requires the court to consider both the inferences plaintiffs wish to draw, as well as any plausible opposing inferences that may be drawn from the facts alleged.  *Id.* at 323.

To set forth the "required state of mind" under the PSLRA, a plaintiff must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco Partners*, 552 F.3d at 991 (quoting *In re Daou Systems, Inc. Securities Litig.*, 411 F.3d 1006, 1014-15 (9th Cir. 2005)).  Deliberate recklessness requires "an extreme departure from the standards of

8

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1  ordinary care, and which presents a danger of misleading buyers or sellers that is

2  either known to the defendant or is so obvious that the actor must have been aware

3  of it." *Id.*

4         In making the scienter determination, the Court must engage in a two-part

5  analysis.  First, the Court must determine whether any allegations, standing alone,

6  create a strong inference of scienter.  If no individual allegations are sufficient, the

7  Court must conduct a "holistic" review of the same allegations to determine

8  whether the insufficient allegations combine to create the necessary "strong

9  inference."  *See Zucco Partners*, 552 F.3d at 992.  Finally, as this Court has

10 previously noted, "the Court must also analyze scienter separately for each alleged

11 misrepresentation and each defendant."  *In re Wet Seal, Inc. Securities Litig.*, 518

12 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007); *see also In re Hansen Natural Corp.*

13 *Securities Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) (same).

14                    (b)    Plaintiffs' Allegations, Standing Alone, Do Not Create a

15                           Strong Inference of Scienter

16         While Plaintiffs attempt to plead various facts to establish scienter, none

17 come close to establishing the "strong inference" required under the PSLRA.  First,

18 Plaintiffs point to the Director Defendants' status as board members, and—in the

19 case of Messrs. Shidlovsky, Jaensch and Tsui only—their membership on MRV's

20 audit committee.  (Compl. ¶¶ 31, 35, 39, 43, 173-176.)  This is insufficient. "In the

21 options backdating context, allegations that a defendant holds a high executive

22 position, without more, do not support a strong inference of scienter." *In re*

23 *Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1047 (N.D.Cal. 2008);

24 *see also In re Silicon Storage Technology, Inc. Shareholder Derivative Litig.*, 2009

25 WL 1974535 (N.D. Cal. 2009), at *11 ("committee membership, without more,

26 falls far short of establishing that the directors acted with scienter in approving

27 backdated grants"); *Wet Seal*, 518 F. Supp. 2d at 1174.

28         Second, Plaintiffs do not specify *any* facts as to what each Director

9

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1  Defendant did in connection with each allegedly-backdated option, let alone what

2  each defendant actually *knew* in connection with each grant.  (Compl. ¶¶ 72, 108-

3  111, *cf. id.* ¶¶ 91-107.)  This alone is fatal to a scienter showing.  "[E]ven when

4  backdating is 'almost certain,' claims against individual defendants must be

5  dismissed unless the complaint provides 'adequate detail regarding their role and

6  knowledge of the alleged backdating.'"  *Silicon Storage*, 2009 WL 1974535, at *11

7  (quoting *Hansen Natural Corp.*, 527 F. Supp. 2d at 1157). *See also Wet Seal*, 518

8  F. Supp. 2d at 1163 (noting that complaint must "provide detailed evidence of the

9  *contemporaneous decision-making behind the alleged accounting errors that*

10  *would combine to show the required scienter*") (emphasis in original).

11       Third, Plaintiffs make purely conclusory allegations that the Director

12  Defendants had access to unspecified "adverse non-public information" and

13  "internal corporate documents," (Compl. ¶¶ 31, 35, 39, 43), and that they "did

14  work in connection with" board meetings.  (*Id.* ¶¶ 32, 36, 40, 44.)  These

15  allegations are insufficient under any standard, for they do not identify *what*

16  information or documents the Director Defendants had access to, or *what* "work"

17  they performed that would create an actionable state of mind.  Rather:

18          Plaintiff cannot base an inference of scienter on
            unspecified documents and conversations. Instead,
19          Plaintiff must allege "the date on which any such
            communication occurred, how [Plaintiff] learned of such
20          a communication, the form in which such contact or
            communication was had, or specifics concerning
21          information provided or received during such contact."

22  *Hansen Natural Corp.*, 527 F. Supp. 2d at 1159 (quoting *In re Splash Tech.*

23  *Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1079-80 (N.D. Cal. 2001).

24  Similarly, the *Zucco* court noted that allegations that management "had access to

25  the purportedly manipulated quarterly accounting numbers, or that the management

26  analyzed the inventory numbers closely, do not support the inference that

27  management was in a position to know that such data was being manipulated."

28  552 F.3d at 1000-1001.

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1    Next, Plaintiffs allege that the Director Defendants "reviewed and approved"

2  the actionable proxy statements, and that they signed the actionable Form 10-Ks.

3  (Compl. ¶¶ 155, 159, 163 (proxy statements);[4] *id.* ¶¶ 218, 222, 226, 230, 234 (10-K

4  forms)[5].)  Again this is insufficient; the fact that defendants signed SEC forms is

5  insufficient by itself to establish scienter.  *See, e.g., In re Affiliated Computer*

6  *Services Derivative Litig.*, 540 F. Supp. 2d 695, 702 (N.D. Tex. 2007); *see also*

7  *Zucco*, 552 F.3d at 1003-04 ("Boilerplate language in a corporation's 10-K form,

8  or required certifications under Sarbanes-Oxley section 302(a), however, add

9  nothing substantial to the scienter calculus.")[6]

10    Plaintiffs also note that MRV restated its financial statements, (Compl. ¶ 5),

11  but again this is not enough to infer scienter.  "In general, the mere publication of a

12  restatement is not enough to create a strong inference of scienter."  *Zucco*, 552 F.3d

13  at 1000; *see also In re VeriSign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207

14  (N.D. Cal. 2007) ("the mere fact that a corporation restates its financial statements

15  does not give rise to a strong inference that any individual defendant acted with

16  intent to defraud.").  On a related note, Plaintiffs attempt to chide the MRV board

17  for not knowing or following Accounting Principles Board Opinion No. 25, which

18  _____

19  [4] *Cf.* Compl. ¶¶ 124, 127 (same allegations as to Shidlovsky and Jaensch as to time-
20  barred proxy statements); *id.* ¶¶ 129, 132, 136, 139, 143, 147, 151 (same
    allegations as to all Director Defendants as to additional time-barred statements).

21  [5] *Cf.* Compl. ¶¶ 194, 198 (same allegations as to Shidlovsky and Jaensch as to time-
22  barred Form 10-Ks); *id.* ¶¶ 202, 206, 210, 214 (same allegations as to all Director
23  Defendants as to additional time-barred 10-K forms).

24  [6] Here, not only is the allegedly-misleading language in the proxy statements and
    Form 10-Ks boilerplate, much of it is not false or misleading at all.  For example,
25  Plaintiffs attack a statement in MRV's 2007 Proxy Statement that the company
26  instituted anti-backdating controls in 2006.  (Compl. 164(b).)  Notably, however,
    Plaintiffs do not allege that any backdating occurred after these controls were
27  instituted.

28

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1   provides guidelines for expensing of options.  (Compl. ¶ 169.)  This argument

2   similarly fails.  "[C]ourts have concluded that APB No. 25 is a complex rule, and

3   that a misapplication of APB No. 25 'cannot be construed as a glaring example of

4   scienter because the measurement date criteria embodied in APB No. 25 are far

5   from obvious.'"  *City of Westland Police and Fire Retirement Sys. v. Sonic*

6   *Solutions*, 2009 WL 942182, at *6 (N.D. Cal. 2009) (quoting *Weiss v. Amkor Tech,*

7   *Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007)).[7]  The more plausible inference to

8   be drawn from a failure to apply APB No. 25 is a lack of understanding of the rule,

9   not a deliberate intent to break it.

10      Plaintiffs similarly allege that Shidlovsky, Jaensch and Tsui, as members of

11   the audit committee, "turned a blind eye" to their purported obligations.  (Compl. ¶

12   173.)  This allegation is substantively no different from allegations that defendants

13   "must have known" of violations, which courts have uniformly rejected.  *See, e..g,*

14   *VeriSign*, 531 F. Supp. 2d at 1205-06; *see also Wet Seal*, 518 F. Supp. 2d at 1174

15   ("Courts have regularly declined to find a strong inference of scienter based on

16   allegations that a particular defendant 'must have known' of information

17   contradicting allegedly false statements because of that individual's position at the

18   company.").

19      Plaintiffs further allege that the Director Defendants (and other Individual

20   Defendants) received backdated options.  This too is insufficient to establish

21   scienter.  *Affiliated Computer Servs.*, 540 F. Supp. 2d at 702 ("As for [individual

22   defendants] who all received the alleged backdated option grants dated July 23,

23   2002, Plaintiffs cannot establish the requisite scienter based only on their receipt of

24   such grants"); *see also Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 890 (N.D. Cal.

25

26   _____

27   [7] *Cf. In re Daou Systems*, 411 F.3d at 1022 ("scienter cannot be established by
     publishing inaccurate accounting figures, even when in violation of GAAP.").

28

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1  2008) (receipt and exercise of options does not support cogent and compelling

2  inference of scienter).

3      Finally, Plaintiffs attempt to point to alleged "insider trading" by various

4  MRV officers and directors as evidence of scienter.  (Compl. ¶ 245.)  However,

5  Plaintiffs simply list every sale of MRV stock made by any officer or director,

6  between 1996 and 2007.  (*Id.*)  This allegation is lacking on its face as to Fischer,

7  who is not alleged to have sold *any* MRV stock.  Nor does this laundry list of sales

8  create an inference of scienter as to Shidlovsky, Jaensch or Tsui.  As the Ninth

9  Circuit has explained, "insider trading is suspicious only when it is 'dramatically

10  out of line with prior trading practices at times calculated to maximize the personal

11  benefit from undisclosed inside information.'"  *Zucco Partners, LLC*, 552 F.3d at

12  1005 (quoting *In re Silicon Graphics, Inc. Securities Litig.*, 183 F.3d 970, 986 (9th

13  Cir. 1999).  Factors that must be considered to determine whether stock sales raise

14  a strong inference of deliberate recklessness are: "(1) the amount and percentage of

15  shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were

16  consistent with the insider's prior trading history."  *Id.*  By simply pointing to all

17  sales made by all directors and officers, without more, Plaintiffs fail to establish

18  that *any* Individual Defendant engaged in any sales "dramatically out of line with

19  prior trading practices."  Accordingly, no inference of scienter is established.

20              (c)      The Complaint Also Fails Under a "Holistic" Analysis

21      Just as each specific building block of the Complaint fails to establish

22  scienter, the Complaint read as a whole fails to do so as to the Director Defendants.

23  Read as a whole, the Complaint shows four directors who joined the company at

24  different times, in different roles.  The Director Defendants are not alleged to have

25  had any particular knowledge with respect to accounting rules, let alone to the

26  timing of option grants.  Nor are they alleged to have any specific knowledge of

27  facts in connection with any of the challenged option grants, most of which were

28  awarded to others.  Moreover, the only challenged grants within the limitations

13

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1    period were not awarded to the Director Defendants, and *were not exercised*.

2    (Compl. ¶ 75.)  Similarly, the Director Defendants engaged in separate trading

3    patterns, none of them suspicious—and indeed, Fischer is not alleged to have

4    engaged in *any* MRV trading.

5       Taken together, these allegations do not raise a "strong inference" of fraud.

6    Rather, they raise inferences that the Director Defendants lacked particular

7    knowledge of the rules governing option grants; that they were not aware of any

8    problems in the option accounting process in light of their lack of expertise and

9    MRV's use of outside auditors; and that the Individual Defendants as a whole did

10    not intend to deceive anyone, let alone to profit by any deception.  These same

11    inferences are reflected in MRV's own SEC filings which include the restated

12    financial statements referred to in Paragraph 5 of the Complaint.  There, MRV

13    notes that its special committee investigating the backdating concluded: "no

14    evidence was found that the option granting practices were carried out for the

15    personal benefit of those awarding options."  (MRV 2008 10-K form (Omnibus

16    RJN, Ex. A), at 46.)  Defendants request that the Court take judicial notice of the

17    2008 10-K.  *See Wet Seal*, 518 F. Supp. 2d at 1157 (noting that on motion to

18    dismiss claim alleging securities fraud, the court may take judicial notice of

19    "documents attached to or *referenced* in the complaint, without converting the

20    motion into one [for] summary judgment," and that "*the court may consider public*

21    *filings, including SEC filings*") (alterations and emphasis in original).  The

22    Complaint at most alleges mistake, not fraud, and should be dismissed.

23       3.    <u>Plaintiffs Cannot Properly Plead Reliance in the Context of This</u>

24         <u>Derivative Suit</u>

25       Plaintiffs' federal claims also suffer from a fundamental problem, given that

26    they are derivative claims brought on behalf of MRV, not on behalf of

27    shareholders.  Plaintiffs must establish that *the company* relied on the alleged false

28    statements and was damaged thereby, but they cannot do so.

14

1    (a)    Section 14 Claim

2        To state a claim under Section 14(a) and Rule 14a-9, a plaintiff must allege

3    (1) a false or misleading statement or omission (2) with respect to a material fact

4    (3) in a proxy statement (4) which caused injury to the plaintiff.  15 U.S.C. §

5    78n(a), 17 C.F.R. § 240.14a-9;  15 U.S.C. § 78u-4(b)(4); *see also Desaigoudar v.*

6    *Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (section 14 claim requires

7    plaintiff to show misstatement was an "essential link" in the accomplishment of the

8    proposed transaction).

9        The typical Section 14(a) claim is brought by a shareholder alleging that a

10   corporate action requiring shareholder approval was either approved or rejected

11   based on a materially misleading proxy statement.  *See, e.g., Va. Bankshares v.*

12   *Sandberg*, 501 U.S. 1083 (1991) (minority shareholders alleged they were misled

13   in connection with vote on a merger by proxy statement stating they would earn a

14   "high" value for their stock).  Here, by contrast, Plaintiffs claim that MRV was

15   damaged by the proxy statements that MRV itself issued.  (Compl. ¶ 276.)  But

16   Plaintiffs do not allege what actions *MRV* took based on the allegedly-misleading

17   proxy statements.  (*Id.*)  Rather, their allegations indicate only that *shareholders*

18   were misled.  (*Id.* ¶ 275 (alleging that statements "were material to plaintiffs and

19   would be material to reasonable investors who voted on each proxy statement," and

20   that statements affected "shareholders' endorsements of the directors' positions, the

21   executive officers' compensation, and the Company's compensation policies.").)

22   At most, Plaintiffs make a conclusory assertion that MRV "relied" upon proxy

23   statements by seeking shareholder approval of the proposals identified therein.  (*Id.*

24   ¶ 120.)  But Plaintiffs do not even allege that the proposals were approved, let

25   alone any further conduct the company undertook in reliance upon the allegedly-

26   false statements.  Plaintiffs thus fail to establish the necessary "essential link"

27   between the false statements and any subsequent act by MRV.  Having failed to

28   allege any facts demonstrating either reliance or causation *by MRV*, Plaintiffs'

15

1  Section 14 claim must be dismissed.

2                    (b)      10b-5 Claim

3       The same reliance problem pervades Plaintiffs' Section 10 (b) claim.  As

4  with Section 14 claims, Section 10(b) claims are typically brought by purchasers

5  claiming they paid an inflated price due to the seller's deception.  Here, Plaintiffs

6  allege that a claim exists due to MRV's sale of its stock pursuant to the allegedly-

7  underpriced options.  (*See*, e.g., Compl. ¶ 279.)  That is fine as far as it goes.

8  However, to state a claim, Plaintiffs need to show *MRV* was misled when it sold

9  the shares, in reliance on the alleged misrepresentations.  This Plaintiffs cannot do,

10  in light of their other allegations.

11       Specifically, the gravamen of Plaintiffs' theory is that MRV's *entire board*,

12  along with the other Individual Defendants, all acted knowingly and in concert to

13  issue the backdated options and to ratify the actions of the officers.  *See, e.g.,*

14  Compl. ¶¶ 60, 65, 279.  "Reliance cannot be established when the individual

15  allegedly acting on a misrepresentation 'already possesses information sufficient to

16  call the representations into question.'" *VeriSign*, 531 F. Supp. 2d at 1209 (quoting

17  *Atari Corp. v. Ernst & Whitney*, 981 F.2d 1025, 1030 (9th Cir. 1992)).  Since,

18  under Plaintiffs' theory, the board already knew of the information calling the

19  options into question, *MRV's* reliance cannot be established.

20       Two recent published cases addressed the identical issue, and concluded that

21  reliance could not be established in a derivative case, where the plaintiffs alleged

22  that the board engaged in a pattern of backdating options.  In *VeriSign*, the court

23  noted that plaintiffs had to establish the company's reliance, and that such reliance

24  might be possible "if they were to allege that the corporate decision-maker for the

25  repurchase of shares had no knowledge of the alleged fraud."  531 F. Supp. 2d at

26  1209.  Because the plaintiffs did not make such an allegation, the court dismissed

27  the Section 10(b) claim.  *Id.*  More recently, in *Brocade*, the court held that the

28  company itself (after the special litigation committee took over the litigation)

16

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1  similarly failed to plead reliance, when it failed to identify any internal

2  decisionmakers who relied on false statements relating to backdating.  615 F. Supp.

3  2d at 1045 (citing and relying upon *VeriSign*).

4      Plaintiffs make only a conclusory allegation that MRV "relied on

5  defendants' conduct and statements in connection with the dating and pricing of

6  options" (Compl. ¶ 279.)  However, as in *VeriSign* and *Brocade*, the Complaint is

7  devoid of any allegations that any specific decision-maker at MRV relied on any

8  false statements.  Nor can Plaintiffs make such an allegation, given their other

9  assertions that the entire board was "in on" the scheme.  Similarly, the Complaint is

10  devoid of allegations setting forth any particular act that MRV took in reliance

11  upon the purportedly-false statements in its 10-K and 10-Q forms.  Rather,

12  Plaintiffs merely describe the statements and note who signed them, without

13  mentioning anything MRV later *did* in reliance upon those statements.  (Compl. ¶¶

14  177-244.)

15      Accordingly, this Court should follow the logic of *VeriSign* and *Brocade*,

16  and dismiss the Section 10(b) claim.

17          4.      Plaintiffs' Section 29(b) Claim Similarly Fails

18      "Section 29(b) itself does not define a substantive violation of the securities

19  laws; rather, it is the vehicle through which private parties may rescind contracts

20  that were made or performed in violation of other substantive provisions."

21  *Berckeley Investment Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006).  To

22  void a contract under Section 29(b), a plaintiff must prove that (1) the contract

23  involved a "prohibited transaction"—that is, an underlying securities law violation;

24  (2) the plaintiff is in contractual privity with the defendant; and (3) the plaintiff is

25  in the class of persons the securities laws are intended to protect.  *Id.*   Here,

26  Plaintiffs premise their Section 29(b) claim upon an underlying violation of Section

27  10(b).  (Compl. ¶ 282.)  In such cases, Section 29(b) plaintiffs must establish the

28  scienter element of the underlying Section 10(b) claim.  *Berckeley*, 455 F.3d at

17

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,**
**GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1   208; *McGowan Investors LP v. Frucher*, 481 F. Supp. 2d 405, 412 (E.D. Pa. 2007)

2   ("But to prove the subordinate 10b-5 violation, the 29(b) plaintiff must still show

3   material misrepresentation and scienter.").

4              (a)      The Option Contracts Themselves are Not "Prohibited

5                       Transactions"

6          The first element of a Section 29(b) claim is read narrowly, and allows for

7   rescission only if the challenged contract cannot be performed without violating the

8   securities laws.  *Berckeley*, 455 F.3d at 206; *see also id.* at 207 ("unlawful

9   transactions made pursuant to lawful contracts do not fall within the ambit of

10  Section 29(b)") (internal quotation marks omitted).  Here, the contracts Plaintiffs

11  seek to rescind are the allegedly-backdated option agreements.  (Compl. ¶ 282-83.)

12         "Backdating options is not itself illegal under the securities laws, nor is it

13  improper under accounting principles." *Edward J. Goodman Life Income Trust v.*

14  *Jabil Circuit, Inc.,* 594 F.3d 783, 788 (11th Cir. 2010).  Rather, backdating is

15  problematic under the securities laws only where the options are not properly

16  recorded and reported as compensation expenses.  *Id.*, *see also United States v.*

17  *Reyes*, 577 F.3d 1069, 1073 (9th Cir. 2009).  Because the pertinent violation in a

18  backdating case involves the *reporting* relating to the option, rather than its

19  issuance or exercise, even a backdated option contract can be performed without

20  violating the securities laws.  Accordingly, Plaintiffs cannot allege that a

21  "prohibited transaction" took place within the meaning of Section 29(b).

22              (b)      Plaintiffs Fail to Establish Scienter

23         To establish scienter for a subordinate Section 10(b) violation, a Section

24  29(b) plaintiff must meet the heightened pleading standards of the PSLRA.

25  *McGowan Investors LP*, 481 F. Supp. 2d at 412.  For the reasons set forth in

26  Section III.B.2, *supra*, Plaintiffs fail to plead scienter with the required specificity,

27  defeating the Section 29(b) claim as well.

28         C.     **Plaintiffs' State Law Claims Are Similarly Deficient**

1    Under the "internal affairs" doctrine, the law of the state of incorporation

2  governs the liability of officers or directors to the corporation and its shareholders.

3  *Shaffer v. Heitner*, 433 U.S. 186, 215 n.44 (1977); *see also CTS Corp. v. Dynamics*

4  *Corp. of America*, 481 U.S. 69, 89 (1987).  Plaintiffs note in the Complaint that

5  MRV is a Delaware corporation.  (Compl. ¶ 21.)  Hence, Delaware law applies to

6  the state law claims.

7              1.    Plaintiffs' Claim For Breach of Fiduciary Duty Sounds In

8                    Fraud, But Lacks Specificity.

9    As explained above, a state law claim that sounds in fraud must still meet the

10  requirements of Rule 9(b) and be pled with specificity.  *Vess*, 317 F.3d 1103-04.

11  "[W]hen a breach of fiduciary duty claim is, in substance, a claim of fraud, the

12  requirements of Rule 9(b) are triggered."  *Adelphia Recovery Trust v. Bank of*

13  *America, N.A.*, 624 F. Supp. 2d  292, 319 (S.D.N.Y. 2009).  Here, there is no doubt

14  that Plaintiffs' claim for breach of fiduciary duty sounds in fraud.  The claim

15  incorporates by reference all of Plaintiffs' earlier backdating allegations (Compl. ¶

16  264); it alleges that all defendants engaged in a deliberate course of conduct (*id.* ¶

17  265); and alleges that the defendants engaged in "fraudulent acts."  (*Id.* ¶ 266.)

18  Similarly, at least one court has squarely held that claims for breach of fiduciary

19  duty based upon backdating of options are subject to Rule 9(b).  *In re Atmel Corp.*

20  *Deriv. Litig.*, 2008 WL 2561957, at *12 (N.D. Cal. 2008) (noting, "Backdating is a

21  form of fraud.").

22    As demonstrated above, the Complaint lacks specificity in numerous aspects.

23  Most tellingly, however, it lacks specificity as to the Plaintiffs' core allegations—

24  the actual grants of allegedly-backdated options, and the decision to backdate.

25  Even though Rule 9 requires an explanation of the "who, what, when, where, and

26  how" of the fraud, as well as the reasons why the acts at issue were allegedly false,

27  (*Vess*, 317 F.3d at 1106), the Complaint does not specify what any Individual

28  Defendant knew or did in connection with any particular option grant at issue.  Nor

19

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1   does the Complaint plead any facts demonstrating what each Individual Defendant

2   knew at the time of the grant, as necessary to show *why* each specific defendant

3   had an actionable state of mind.  (*See* Compl. ¶¶ 91-111; *see also* Section

4   III.B.2.(b), *supra*.).  Absent the necessary factual showing to satisfy Rule 9(b) as to

5   each Director Defendant, Plaintiffs' claim for breach of fiduciary duty fails.

2.   <u>Plaintiffs' Claims for "Gross Mismanagement," "Abuse of</u>
6
<u>Control," and "Constructive Fraud" are All Duplicative of the</u>
7
<u>Claim for Breach of Fiduciary Duty and Must Be Dismissed</u>
8

9   "Delaware law does not recognize an independent cause of action against

10  corporate directors and officers for reckless and gross mismanagement; such claims

11  are treated as claims for breach of fiduciary duty."  *In re Citigroup Inc.*

12  *Shareholder Deriv. Litig.*, 964 A.2d 106, 114 n.6 (Del. Ch. 2009).  *See also in re*

13  *Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007) (noting that

14  claims for abuse of control, and gross mismanagement "are often considered a

15  repackaging of claims for breach of fiduciary duties instead of being a separate

16  tort.").  Since claims for gross mismanagement and abuse of control are not

17  recognized under Delaware law, they must be dismissed, particularly since

18  Plaintiffs have already included a claim for breach of fiduciary duty.

19  The same is true of Plaintiffs' claim for constructive fraud.  "Under

20  Delaware Law, a claim for 'constructive fraud' is treated as another way to allege a

21  claim for breach of fiduciary duty."  *Transocean Grp. Holdings Pty. Ltd. v. South*

22  *Dakota Soybean Processors, LLC*, 663 F. Supp. 2d 731, 745 (D. Minn. 2009),

23  citing *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1236-37

24  (Del. Ch. 2001), *rev'd on other grounds*, 817 A.2d 149 (Del. 2002).  *See also Italo-*

25  *Petroleum Corp. of America v. Hannigan*, 14 A.2d 401, 407-08 (Del. 1940)

26  ("Constructive fraud is a *breach of legal or equitable duty*" which may tend to

27  deceive others) (emphasis added).  Indeed, Plaintiffs themselves note that the

28  constructive fraud claim is premised upon the Individual Defendants' fiduciary

20

1  duties.  *See* Compl. ¶¶ 300-301.  The claim should thus be dismissed.

2         3.    Plaintiffs Cannot Establish a Claim for Corporate Waste

3         To state a claim for corporate waste, a plaintiff must allege facts that, if true,

4  establish that the Director Defendants authorized an exchange "that is so one sided

5  that no business person of ordinary, sound judgment could conclude that the

6  corporation has received adequate consideration."  *Glazer v. Zapata Corp.*, 658

7  A.2d 178, 183 (Del. Ch. 1993).  That is, the "shareholder must demonstrate that the

8  transaction in question either served no purpose or was so completely bereft of

9  consideration that the transfer is in effect a gift."  *Lewis v. Vogelstein*, 699 A.2d

10  327, 336 (Del. Ch. 1997).

11         Plaintiffs do not and cannot meet this exacting standard.  Here, the

12  Complaint does not allege that the purportedly-backdated options were "bereft of

13  consideration," but merely that they were undervalued.  As such, Plaintiffs cannot

14  establish that the transfers lacked consideration to the extent necessary to constitute

15  waste.  *See In re Atmel Corp. Deriv. Litig.*, 2007 WL 2070299, at *10 (N.D. Cal.

16  2007) (dismissing claim for corporate waste based upon allegations of backdated

17  options, noting that plaintiffs did not allege facts constituting a gift, but "instead,

18  they have alleged a grant of equity-compensation.").

19         4.    The Claim for "Unjust Enrichment" Fails Because the Parties'

20             Relationship Was Governed by Contract

21         Unjust enrichment is a quasi-contract theory of recovery.  *Res. Ventures, Inc.*

22  *v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439-40 (D.Del. 1999).  Pursuant to

23  Delaware law, when a contract exists, a plaintiff may not pursue an unjust

24  enrichment theory of recovery.  *Res. Ventures*, 42 F.Supp.2d at 439-40; *Dalton v.*

25  *Ford Motor Co.*, 2002 WL 338081 (Del. Super.Ct. Feb.28, 2002); *Schiff v. Am.*

26  *Assoc'n of Retired Persons*, 697 A.2d 1193, 1194 n. 2 (D.C. 1997) (affirming

27  ruling that because the complaint demonstrated the existence of contracts the court

28  had to dismiss the unjust enrichment claim).  Thus, when a complaint alleges the

21

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,**
**GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

existence of a contract and also claims unjust enrichment, the court must dismiss the unjust enrichment claim for failure to state a cognizable claim.  *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 94 (D.D.C. 2003).  *See also Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) ("Because the contract is the measure of plaintiffs' right, there can be no recovery under an unjust enrichment theory independent of it."); *In re Ditech Networks, Inc. Deriv. Litig.*, 2008 WL 820705 *9 (N.D.Cal. Mar. 26, 2008) (rejecting unjust enrichment claim because plaintiffs failed to show "other adequate remedies are not provided by law").

Here, the "unjust enrichment" complained of are the Individual Defendants' gains allegedly resulting from purportedly-backdated options—which are entirely contractual in nature.  *See, e.g.,* Compl. ¶¶ 312-13 (alleging that options were granted via contract and seeking rescission).  In light of the contractually-based nature of Plaintiffs' claims with regard to the options, their claim for unjust enrichment fails.

The claim for unjust enrichment fails for the additional reason that no options were exercised during the limitations period.  Under Delaware law, a three-year limitations period applies to equitable claims.  *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007).  Here, the three year period runs back to June 10, 2005.  Only one option was granted in that period, and it was not exercised.  (Compl. ¶ 74.)  Thus, Plaintiffs cannot establish damages on this claim.

5.    "Rescission" and "Accounting" are Remedies, Not Separate Claims for Relief

Under Delaware law, "rescission is a form of remedy, not a claim under the law."  *Zoran*, 511 F. Supp. 2d at 1019 (applying Delaware law and dismissing rescission claim).  Accordingly, Plaintiffs' eleventh claim fails as a matter of law.

The same is true of Plaintiffs' fifth claim for an accounting.  Under Delaware law, "[a]n accounting is an *equitable remedy* that consists of the adjustment of

22

1    accounts between parties and a rendering of a judgment for the amount ascertained

2    to be due to either as a result." *Developers Diversified Realty Corp. v. Vidalakis*,

3    2008 WL 5705708, at *15 (N.D. Ohio 2008) (emphasis added, quoting *Albert v.*

4    *Alex Brown Mgmt. Servs., Inc.*, Nos. Civ.A 762-N & 763-N, 2005 WL 2130607, at

5    *11 (Del. Ch. Aug. 26, 2005), and dismissing accounting claim).  Plaintiffs may

6    seek rescission and accounting in their prayer for relief, but cannot include them as

7    separate claims.

8         D.    **Plaintiffs Have Not Verified the Complaint As Required Under**

9              **Rule 23.1**

10        Rule 23.1(b) mandates that, among other things, a derivative complaint be

11   "verified."  The verification requirement is not a mere formality, but rather

12   "assure[s] the court" that the allegations have been "responsibly investigated … at

13   the behest of the named plaintiff, who then stands behind the merits of the

14   Complaint."  *In re MIPS Techs., Inc. Sec. Litig.,* 542 F. Supp. 2d 968, 973-74 (N.D.

15   Cal. 2008), quoting *Rogosin v. Steadman*, 65 F.R.D. 365, 367 (S.D.N.Y. 1974).  In

16   this regard, verifications (like certifications required in class actions by the Private

17   Securities Litigation Reform Act) help ensure that litigation is directed by

18   shareholders rather than lawyers and "confirm that the plaintiff investors still wish

19   to pursue this case."  *MIPS*, 542 F. Supp. 2d at 974.

20        A pleading is "verified" if a plaintiff attests to its accuracy under penalty of

21   perjury or by swearing to it before a notary public.  *Banks v. Appleton Papers, Inc.*,

22   2005 WL 5602039, *1 n.3 (S.D. Ohio Mar. 28, 2005).  *See also* 28 U.S.C. § 1746;

23   *Escareno v. Bangs*, 2007 WL 4287273, *1 (E.D. Wash. Dec. 4, 2007) ("[a]

24   pleading counts as 'verified' if the drafter states under penalty of perjury that the

25   contents are true and correct").  Here, Mr. Gautreaux's so-called "verification"

26   asserts only that the pleading is "true and correct" to "the best of [his] knowledge,

27   information and belief," and is not made under penalty of perjury.  For his part, Mr.

28   Rubin merely says – again, not under penalty of perjury – that he "believe[s]" some

23

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,
GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1  of the allegations (which are never specified) "to be true," and as to the rest he is

2  "rely[ing] on my counsel and their investigation."  The absence of proper

3  verification means that, even apart from the other deficiencies discussed above, the

4  Complaint is subject to dismissal.  *Glenbrook Cap. Ltd. P'ship v. Kuo*, 2007 WL

5  2601260, at *13 (N.D. Cal. Sept. 6, 2007).

6        E.      **The Complaint Should Be Dismissed With Prejudice**

7        Although motions to dismiss are normally granted with leave to amend, a

8  complaint may be dismissed with prejudice where amendment would be futile.

9  *E.g., Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).  Here,

10  most of Plaintiffs' state-law claims are not proper claims for relief as a matter of

11  law.  Plaintiffs cannot plead the appropriate state of mind, both in light of the

12  overall picture presented by the pleadings, and because MRV's restated financial

13  statements dispel any inference of fraud.  Moreover, Plaintiffs' federal claims are

14  deficient as a matter of law, because Plaintiffs cannot show that MRV relied on

15  statements made by MRV itself.  Thus, no amendment will be able to cure the

16  deficiencies identified in the motion, and the Complaint should be dismissed with

17  prejudice.

18  IV.  **CONCLUSION**

19        For the foregoing reasons, the Court should dismiss the Amended

20  Consolidated Verified Complaint as to the Director Defendants, without leave to

21  amend.

22  DATED: July 19, 2010                    Respectfully submitted,

23                                          SCHEPER KIM & HARRIS LLP
                                            DAVID C. SCHEPER

24                                          GREGORY A. ELLIS

25
                                            By:  ____/S/ David C. Scheper____
26                                          David C. Scheper
                                            Attorneys for Defendants Igal Shidlovsky,
27                                          Guenter Jaensch, Daniel Tsui and Baruch
                                            Fischer
28
                                    24
        **NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY,**
        **GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION OF DEFENDANTS IGAL SHIDLOVSKY, GUENTER JAENSCH, DANIEL TSUI AND BARUCH FISCHER TO DISMISS**