1  Robert A. Sacks (CA Bar No. 150146)
   sacksr@sullcrom.com
2  Adam S. Paris (CA Bar No. 190693)
   parisa@sullcrom.com
3  **SULLIVAN & CROMWELL LLP**
   1888 Century Park East, Suite 2100
4  Los Angeles, California 90067-1725
   Telephone:  (310) 712-6600
5  Facsimile:   (310) 712-8800

6  Attorneys for Nominal Defendant
   MRV COMMUNICATIONS, INC.

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

| In re MRV COMMUNICATIONS, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Master File No.<br>  2:08-cv-03800-GAF(MANx)<br><br>**MRV COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 19, 2011<br>Time: 9:30 a.m.<br>Courtroom: 740<br>Honorable Gary A. Feess<br><br>Discovery Cutoff:  Not Set<br>Pretrial Conference Date:  Not Set<br>Trial Date:  Not Set |
|---|---|

-1-

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 19, 2011, at 9:30 a.m., or as soon thereafter as the matter may be heard in the United States District Court, Central District of California, located at the Roybal Federal Building, 225 E. Temple Street, Los Angeles, California, 90012, Nominal Defendant MRV Communications, Inc., through its undersigned counsel, will, and hereby does, move to stay this litigation pending the investigation and recommendations of a Special Litigation Committee.

This Motion will be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Denis Shmidt filed herewith, the complete files and records in this action, and such additional material as may be considered at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 1, 2011.

Dated:  November 17, 2011          Respectfully submitted,

/s/ Adam S. Paris
Robert A. Sacks (CA Bar No. 150146)
sacksr@sullcrom.com
Adam S. Paris (CA Bar No. 190693)
parisa@sullcrom.com

**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:    (310) 712-8800

Attorneys for Nominal Defendant
MRV COMMUNICATIONS, INC.

**Table of Contents**

| | Page |
|---|---|
| INTRODUCTION AND BACKGROUND | 1 |
| ARGUMENT | 5 |
| I. MRV'S SPECIAL LITIGATION COMMITTEE WILL ASSESS WHETHER TO CONTINUE TO EXPEND SUBSTANTIAL CORPORATE ASSETS IN PURSUIT OF THE CLAIMS IN THIS LITIGATION. | 5 |
| II. THE COURT SHOULD STAY THE LITIGATION PENDING THE SPECIAL LITIGATION COMMITTEE'S REVIEW, FINDINGS AND DETERMINATION. | 7 |
| III. IF THE COURT DOES NOT STAY THIS LITIGATION, THE COURT SHOULD REQUIRE PLAINTIFFS TO POST A SECURITY FOR COSTS OF THIS LITIGATION. | 9 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cohen* v. *Beneficial Indus. Loan Corp.*
  337 U.S. 541 (1949) .................................................................................................. 10

*In re Merrill Lynch Relocation Management, Inc.*
  812 F.2d 1116 (9th Cir. 1987) ............................................................................... 9, 10

*Johnson* v. *Hui*
  811 F. Supp. 479 (N.D. Cal. 1991) .............................................................................. 5

*Litton Indus., Inc. by Wildflower P'ship* v. *Hoch*
  996 F.2d 1225 (9th Cir. July 02, 1993) ....................................................................... 6

*Maldonado* v. *Flynn*
  573 F. Supp. 684 (S.D.N.Y 1983) ............................................................................... 6

**DELAWARE CASES**

*Abbey* v. *Comp. & Comm. Tech. Corp.*
  457 A.2d 368 (Del. Ch. 1983) ..................................................................................... 5

*Kaplan* v. *Wyatt*
  484 A.2d 501 (Del. Ch. 1984), *aff'd* 499 A.2d 1184 (Del. 1985) ............................... 7

*Zapata Corp.* v. *Maldonado*
  430 A.2d 779 (Del. 1981) ........................................................................................ 5, 6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Nominal Defendant MRV Communications Inc. ("MRV" or the "Company") respectfully submits this Motion to Stay pending the review of this action by an independent Special Litigation Committee, to be comprised of new and independent MRV directors who joined the Company well after any of the events alleged in the Complaint, and tasked with assessing whether to continue to expend substantial, and rapidly diminishing, Company assets in pursuit of the claims posited by derivative Plaintiffs in this litigation.

## **INTRODUCTION AND BACKGROUND**

This is a shareholder derivative action brought by Plaintiffs purportedly on behalf of—and also for the benefit of—nominal defendant MRV, against certain of MRV's current and former officers and directors (the "Individual Defendants"). This action has consumed, and is expected to continue to consume, substantial and diminishing Company resources, prompting MRV to decide to form a Special Litigation Committee ("SLC"). The SLC will conduct a thorough, independent assessment of whether to continue to pursue the claims alleged in this action, including the likelihood of a recovery that would justify the significant cost (in both time and resources) associated with this litigation.

This is not a decision that the Company has made in haste. In fact, it is consistent with the seriousness with which the Company has addressed the matters at issue in this litigation from the outset. On June 6, 2008, MRV announced that it had begun a voluntary review of the Company's historical stock option practices and related accounting, with a likely impact on financial statements for the periods 2002 to 2008. (Compl. ¶ 5.) This announcement led to the filing of several putative class actions asserting federal securities law claims against MRV and certain of its then-directors and officers. It also led to the filing of shareholder derivative actions—including this one—in both federal and California state court. MRV resolved consensually the securities claims in their

entirety. The only claims that remain are these derivative ones, purportedly brought for the betterment of MRV.

With its June 6, 2008 announcement, MRV created a special committee to investigate the Company's options granting practices. The committee retained the law firm Proskauer Rose LLP ("Proskauer") and PricewaterhouseCoopers ("PwC") to assist the investigation. The investigation lasted more than eight months, examining events that took place over a decade, including a review of millions of page of documents and dozens of in-person interviews at MRV offices in the United States and abroad.

The special committee's work resulted in multiple large scale governance reforms, including: policies mandating prior board approval of all grants, formal policies and procedures for approving or modifying option grants, standardized documentation and a specialized recording system for options grants, the hiring of a new president, general counsel, internal auditor, outside plan administrator and new board members. Since then, turnover in MRV's board of directors and management team has been near total. Of the directors on MRV's board as of the end of 2008, only Igal Shidlovksy ("Shidlovsky") remains a director.[1]

With the governance and structural reforms having been voluntarily undertaken while this suit was in its infancy, the only true object of the lawsuit is to recover monies from the Individual Defendants. Yet rather than focusing on recovering as much as possible for the company, Plaintiffs have forced MRV to spend more than a year responding to Plaintiffs' sweeping, expensive and increasingly burdensome discovery requests. To date, MRV has reviewed, processed and produced over thirty-two thousand responsive documents, representing over four hundred thousand pages, as well as a detailed privilege log

---

[1] Shidlovsky is also the only remaining Individual Defendant in this action still affiliated with MRV.

with almost 2,000 entries—a massive undertaking in light of the scope of the Company's document review and production, yet still less than 6% of the total documents produced.  (Declaration of Denis Shmidt in Support of MRV's Motion to Stay Litigation (Shmidt Declaration) ¶¶ 7-9.)

Plaintiffs have never provided the slightest evidence of why, or how, they expect to recoup the staggering costs of this litigation from any of the Individual Defendants.  Yet Plaintiffs still insist that MRV continue to engage in an enormous amount of expensive discovery, standing alone, that the Company estimates will cost hundreds of thousands of dollars and is expected to yield little, if any, new information relevant to any of Plaintiffs' derivative claims.  (*Id.* ¶¶ 16-20.)  Plaintiffs have promised to take over twenty depositions, including numerous depositions of current MRV officers and employees.  Plaintiffs' most recent discovery demands seek immediate production of all but *two* of the nearly 2,000 documents over which MRV has asserted attorney-client privilege.  (*Id.* ¶ 10.)  Plaintiffs also moved to "compel" the production of information already produced—creating a flurry of briefing concerning Plaintiffs' "utter and shocking disregard" of the terms of the Court's Protective Order in the process (*id*. ¶ 12, Ex. D at 2)—and have also moved to compel the restoration and review of nearly 60 legacy backup tapes, which Plaintiffs have no actual basis to believe contain any new, non-cumulative information pertinent to their claims in this action that would justify the massive expense associated with the restoration and review of scores of old backup tapes (*id*. ¶ 20).  Finally, just last Friday, Plaintiffs served 114 Requests for Admission in a document that spans over 230 pages.  (*Id.* ¶ 23, Ex. H.)

In these and other respects,  Plaintiffs' litigation tactics have created additional work and new, collateral issues to be litigated, ratcheting up the cost of the action for MRV in the hopes of building a record Plaintiffs can use to justify what will inevitably be a disproportionate fee request for their "services."  Plaintiffs have chosen to embark on this course aware that MRV's insurance funds

are diminishing (dkt. 150 at 8) and without having given MRV any indication that they have conducted any assessment of the likelihood of a meaningful recovery from the Individual Defendants in favor of MRV.

Accordingly, MRV now seeks a stay of this litigation to allow its SLC to conduct an independent review of this action and determine whether the continuation of this action is in the overall best interests of the Company. The members of the Special Litigation Committee are independent directors Joan E. Herman, Charles M. Gillman and Robert M. Pons. Each of these individuals has a wealth of corporate governance experience, and none of them were affiliated with MRV (or any of the individual Defendants) during any of the relevant time period in this litigation. (Shmidt Decl. ¶ 24, Ex. I.) Joan E. Herman joined MRV's board of directors on October 6, 2009 and benefits from nearly 40 years of experience in a variety of capacities throughout the healthcare and insurance industries, most recently as President and CEO of her own healthcare and management consulting firm. (*Id.*) Charles M. Gillman became a director of MRV on November 11, 2009, having held a number of positions in the investment management industry, through which he has developed a deep expertise in the analysis of companies going through dramatic corporate transitions. (*Id.*) Robert M. Pons joined MRV's board of directors on October 20, 2011, bringing over 30 years of senior level management experience in the telecommunications industry, ranging from early stage ventures to Fortune 500 and turnaround companies. (*Id.*)

Given that most of the corporate governance reforms Plaintiffs seek were instituted *voluntarily* by MRV years ago, the SLC will be asked to determine whether the cost of pursuing MRV's claims against the Individual Defendants are justified, particularly in light of the amount that MRV could realistically expect to collect on any judgment(s) secured in its favor. MRV has chosen to refer this question to an independent committee at this time because the rapidly mounting costs of the litigation, coupled with MRV's diminishing insurance reserves.

-4-

MRV's requests that the Court stay these proceedings for a short time until the SLC performs its duties and submits a formal report of its findings to the Court for review. In the alternative, if the Court believes a stay is unwarranted, the Court should require Plaintiffs to post a bond in the amount of $10 million dollars in MRV's favor as a condition to their continued prosecution of their derivative claims.

## ARGUMENT

### I. MRV'S SPECIAL LITIGATION COMMITTEE WILL ASSESS WHETHER TO CONTINUE TO EXPEND SUBSTANTIAL CORPORATE ASSETS IN PURSUIT OF THE CLAIMS IN THIS LITIGATION.

Under Delaware law,[2] when a shareholder institutes a derivative action, the board of directors of the corporation may form a special litigation committee of disinterested directors, which is delegated the full authority of the board to investigate the claim and determine whether the continued prosecution of the derivative claim is in the best interests of the corporation. *Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 786-787 (Del. 1981). A special litigation committee may be appointed even when demand is excused due to the board's self-interestedness. *See Abbey* v. *Comp. & Comm. Tech. Corp.*, 457 A.2d 368, 372 (Del. Ch. 1983) ("Where the board was tainted with apparent self-interest under the allegations of the complaint, it was held that the problem was one of member disqualification. The underlying power to terminate the suit remained.").

Such a committee may be appointed even though this litigation has been ongoing for several years. For example, the *Zapata* case involved a derivative litigation filed in 1975 and allowed to proceed under a theory of demand

---

[2] "[A]s MRV was incorporated in Delaware, Delaware law governs." (Dkt. 61 at 4 (internal citations omitted).); *see also Johnson* v. *Hui*, 811 F. Supp. 479, 485 (N.D. Cal. 1991) (holding that a special litigation committee's motion to terminate a shareholder derivative litigation "is determined by Delaware law" for a Delaware corporation).

-5-

Sullivan & Cromwell LLP

MRV'S MOTION TO STAY

futility. *Zapata*, 430 A.2d at 780, 783. After more than four years of litigation, and after four of the defendant directors ceased service on the board, the company appointed an "independent investigation committee," comprised of new board members which recommended termination of the suit. *Id*. at 781. Recognizing that "[s]ituations could develop where such motions could be filed after years of vigorous litigation for reasons unconnected with the merits of the lawsuit[,]" the Delaware Supreme Court posited a two-step analysis to ensure a just result. *Id*. at 787. First, the Court is to inquire into the independence and good faith of the committee, and second, the court applies its own independent business judgment. *Id.* at 788-89. In so holding, the court found that the nominal defendant company still had the authority to create an independent investigation committee to evaluate the lawsuit and make appropriate recommendations. *Id*. at 786-88.

Since its publication in 1981, the *Zapata* opinion has been accepted and adopted in numerous circuits, including this one. *See Litton Indus., Inc. by Wildflower P'ship* v. *Hoch*, 996 F.2d 1225, *2 (9th Cir. July 02, 1993) (citing *Zapata* for the proposition that "[u]nder Delaware law, 'a board decision to cause a derivative suit to be dismissed as detrimental to the company, after demand has been made and refused,' is reviewed under the business judgment rule").

Similar to the *Zapata* case, this action began over three years ago. Since then, MRV has turned over its board, replacing all but one defendant director, and appointing seven out of eight new directors independent from any of the underlying events that led to this litigation. Under Delaware law, MRV may appoint a committee of new and independent directors to review the possible merits and expected costs of this derivative lawsuit. *See Zapata*, 430 A.2d at 787; *see also Maldonado* v. *Flynn*, 573 F. Supp. 684, 685 (S.D.N.Y 1983) (dismissing a *Zapata*-related suit after ten years of litigation based on the sound determination of an independent investigation committee).

Not only is the new board sufficiently independent to form a special litigation committee, it also has the proper expertise. In addition to bringing a fresh perspective, as these new directors have no ties to MRV's prior board and management team, its seven new and independent directors bring a wealth of financial experience. These are all individuals who were elected to the board in connection with MRV's corporate governance overhaul, per the February 2009 recommendations of the special committee. Five board members have received masters degrees in business administration, one of whom is also a certified public accountant. Five board members have also spent a large part of their careers in the financial industry, and all of them have substantial prior board and leadership experience. (Shmidt Decl. Ex. I.)

Accordingly, the board's decision to appoint a Special Litigation Committee is a prudent, independent decision which is not motivated by any board members' self-interest. This committee will be comprised of fully independent directors who had nothing whatsoever to do with the alleged stock option backdating, and were not affiliated with MRV at the time of any of the conduct or events at issue in this litigation. (*Id.* ¶ 24, Ex. I.)

## II. THE COURT SHOULD STAY THE LITIGATION PENDING THE SPECIAL LITIGATION COMMITTEE'S REVIEW, FINDINGS AND DETERMINATION.

Pending the SLC's review of this matter, the litigation should be stayed. Courts are empowered to stay litigation to permit a special litigation committee to perform its function and investigate whether pursuit of the derivative claims is in the corporation's best interests, and the Court should do so here. *See Kaplan* v. *Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984), *aff'd* 499 A.2d 1184 (Del. 1985) ("It is a foregone conclusion that such a stay must be granted. Otherwise, the entire rationale of *Zapata*, *i.e.*, the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses.").

A stay is especially appropriate at this juncture. MRV has made a substantial series of document production, comprising of over thirty-two thousand documents. (Shmidt Decl. ¶ 8.) MRV spent hundreds of hours reviewing nearly four hundred thousand documents from 28 unique custodians, consisting of millions of pages and spanning over a decade. (*Id.* ¶ 7.) Yet without ever explaining what information (if any) is missing, or why Plaintiffs need additional information from the Company to pursue claims against the Individual Defendants, Plaintiffs continue to insist that more discovery is necessary.

On September 23, 2011, Plaintiffs served each Individual Defendant with their First Request for Production. On October 11, 2011, Plaintiffs served written Interrogatories on MRV and on each Individual Defendant. (*Id.* ¶ 21.) In their Second Joint Scheduling Conference, Plaintiffs proposed October 14, 2011 as the date by which they will file discovery motions against MRV based on its document production and privilege log, and August 31, 2012—ten months later—as the fact discovery cutoff. (Dkt. 169.) Plaintiffs also seek to take approximately two dozen depositions, many of current MRV officers and employees. (*Id.*) This discovery plan evidences Plaintiffs intention to initiate even more, costly motion practice against MRV. Plaintiffs have already filed two burdensome and overbroad motions seeking to compel production of all of MRV to produce nearly all the documents listed on its privilege log and to restore 56 backup tapes. (Shmidt Decl. ¶¶ 10, 20.)

Despite having already been provided with over thirty-two thousand documents, Plaintiffs demand that MRV continue to spend considerable resources and undertake overly burdensome and costly efforts to restore and review backup tapes spanning over a decade, which are highly unlikely to reveal any relevant information not already in Plaintiffs' possession. (*Id.* ¶¶ 16-20.) Despite MRV's repeated explanation that the millions of dollars such an endeavor would cost cannot possibly be justified, Plaintiffs have refused to relent. (*Id.* ¶ 20.)

-8-

Rather than use this lawsuit as an attempt to fix what they perceive as continuing management or governance problems at MRV, or to help MRV recuperate monies supposedly lost as a result of the Individual Defendants' actions, Plaintiffs are prolonging this litigation in order to exhaust its remaining D&O insurance funds and require MRV to underwrite the representation of all of the Individual Defendants (which includes eight national law firms).

A brief stay at this juncture would allow the SLC independently to assess the value of this lawsuit for MRV, not for Plaintiffs' attorneys. A neutral and unbiased committee will objectively review, among other things, Plaintiffs' likelihood of success; the value of a judgment(s); the likelihood of recovery on such judgment(s); whether the Company has undertaken appropriate internal reforms; and whether the Company will ultimately be enriched or harmed by the continued prosecution of this suit. The SLC will then issue its recommendation, which will be submitted to the Court for review. Subjecting the present litigation to these two levels of independent review will ensure that the fundamental purpose of this shareholder derivative action—namely, the betterment of MRV—is vindicated.

### III.   IF THE COURT DOES NOT STAY THIS LITIGATION, THE COURT SHOULD REQUIRE PLAINTIFFS TO POST A SECURITY FOR COSTS OF THIS LITIGATION.

Plaintiffs contend that no independent assessment by MRV is necessary at this stage to conclude that proceeding with these claims is in the best interests of MRV and its shareholders. If the litigation is to proceed without the independent review of its merits that MRV seeks, Plaintiffs should be required to bear some portion of the risk that the costs of this litigation exceeds its returns. "Federal courts have inherent authority to require plaintiffs to post security for costs." *In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987). Under these circumstances, the Court should require Plaintiffs to post a bond in the amount of ten million dollars, indemnifying MRV for any costs

incurred in excess of recovery, as a condition to their continued prosecution of these claims.

As the Supreme Court has remarked, shareholder derivative litigation presents unique circumstances that may render the imposition of a surety particularly appropriate at times. Because a plaintiff-shareholder "sues not for himself alone . . . [t]he interests of all [stockholders] . . . are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative ." *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (requiring shareholder derivative plaintiffs to post bond indemnifying corporation for incurred costs before prosecuting claims against individual defendant directors). These circumstances raise legitimate concerns about placing the courts "at the disposal of such a representative . . . without imposing standards of responsibility, liability and accountability which . . . will protect the interests he elects himself to represent." *Id.* at 550.

In the exercise of its fiduciary responsibilities to MRV shareholders, MRV's independent board seeks to investigate further before committing even more of the corporation's assets to the continued pursuit of this litigation. Whereas Plaintiffs seek to plow ahead without assessing the dubious practical merits of doing so, and without any seeming regard for MRV shareholders who must depend on Plaintiffs' "diligence, wisdom and integrity" but have no means to keep them accountable, *see id.* at 549, MRV is far more cognizant of the potential risks and rewards this litigation presents. Ordering Plaintiffs to post a bond in order to continue their pursuit of these derivative claims will impose the accountability and responsibility necessary to protect the interests of MRV and its shareholders.

Finally, requiring Plaintiffs to provide a surety in this case will help ensure that Plaintiffs' tactics in pursuing these actions are directed toward their

only permissible end: the maximization of recovery by MRV on any claims prosecuted in its name.  Holding Plaintiffs accountable for costs incurred by MRV in excess of recovery will align the parties' incentives with regard to the respective costs and benefits of undertaking additional discovery.  Such a measure is particularly appropriate at this stage of the litigation, given the likelihood that Plaintiffs' ever-increasing and burdensome discovery requests are directed more toward a calculated campaign of attrition than the true discovery of meaningful, relevant information.

## CONCLUSION

For the foregoing reasons, MRV respectfully requests that the Court stay the litigation pending a review and report by a Special Litigation Committee composed of MRV's new, independent directors.  Alternatively, MRV requests that Plaintiffs be ordered to post a $10 million bond.

Dated:  November 17, 2011            Respectfully Submitted,

/s/ Adam S. Paris
Robert A. Sacks (CA Bar No. 150146)
sacksr@sullcrom.com
Adam S. Paris (CA Bar No. 190693)
parisa@sullcrom.com

**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:     (310) 712-8800

Attorneys for Nominal Defendant
MRV COMMUNICATIONS, INC.