1  WILMER CUTLER PICKERING
2      HALE & DORR LLP
   David C. Marcus (SBN 158704)
3  david.marcus@wilmerhale.com
   Christopher T. Casamassima (SBN 211280)
4  chris.casamassima@wilmerhale.com
5  350 South Grand Avenue
   Los Angeles, CA 90071
6  Telephone: (213) 443-5312

7
   *Attorneys for the Special Litigation*
8  *Committee of the Board of Directors*
   *of MRV Communications, Inc.*
9
                    **UNITED STATES DISTRICT COURT**
10
                    **CENTRAL DISTRICT OF CALIFORNIA**
11
                         **WESTERN DIVISION**
12

13

14 | In re MRV COMMUNICATIONS, | ) | Master File No. |
   | INC. DERIVATIVE LITIGATION | ) | 1:08-cv-03800-GAF(MANx) |

15 ——————————————————— )

16 This Document Relates To:         )  **SPECIAL LITIGATION**
                                     )  **COMMITTEE OF THE BOARD OF**
17     ALL ACTIONS.                  )  **DIRECTORS OF MRV**
                                     )  **COMMUNICATIONS, INC.'S**
18                                   )  **MEMORANDUM IN SUPPORT OF**
                                     )  **PLAINTIFFS' MOTION FOR**
19                                   )  **PRELIMINARY APPROVAL OF**
                                     )  **DERIVATIVE SETTLEMENT**
20                                   )
21                                   )
                                     )  Hearing Date:  April 8, 2013
22                                   )  Time: 9:30AM
                                     )  Courtroom: 740
23                                   )  Judge: Hon. Gary A. Feess
                                     )
24 ——————————————————— )

25

26

27

28
   ————————————————————————————————————
   **MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1

TABLE OF CONTENTS

2    INTRODUCTION ...................................................................................................1

3    FACTUAL BACKGROUND....................................................................................2

4    I.      First Special Committee Investigation ...........................................................2

5    II.     Financial Restatement .....................................................................................3

6    III.    Formation of the SLC .....................................................................................3

7    IV.     The SLC Investigation.....................................................................................6

8    V.      Conclusions of the SLC ..................................................................................7

9    ARGUMENT ............................................................................................................8

10   I.      The SLC Is Empowered to Manage this Litigation ........................................8

11   II.     The SLC Is Independent and Acted in Good Faith .........................................9

12   III.    The SLC's Conclusion that the Stipulation of Settlement, and Each of
             its Terms, is in the Best Interests of MRV and its Stockholders is
13           Reasonable......................................................................................................12

14   CONCLUSION.......................................................................................................13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

CASES

3

*In re Oracle Sec. Litig.,*

4
    852 F. Supp. 1437 (N.D. Cal. 1994)................................................................9, 10

5

*Johnson v. Hui,*
    811 F. Supp. 479 (N.D. Cal. 1991)................................................................9, 10

6

7

*Kaplan v. Wyatt,*
    484 A.2d 501 (Del. Ch. 1984) ........................................................................ 9, 10

8

*Officers for Justice v. Civil Serv.* Comm'n

9
    688 F.2d 615, 625 (9th Cir. 1982)......................................................... 1, 11

10

*Zapata Corp. v. Maldonado,*
    430 A.2d 779 (Del. 1981)................................................................8, 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## INTRODUCTION

The Special Litigation Committee ("SLC") of the Board of Directors MRV Communications, Inc. ("MRV" or the "Company") submits this brief in support of the motion of plaintiffs Warren Rubin IRA and Donald Gautreaux, ("Federal Plaintiffs"), dated March 1, 2013 for preliminary approval of the Stipulation of Settlement between Federal Plaintiffs on behalf of themselves and derivatively on behalf of MRV; defendants Noam Lotan, Shlomo Margalit, Shay Gonen, Guy Avidan, Guenter Jaensch, Igal Shidlovsky, Daniel Tsui, Harold W. Furchtgott-Roth and Baruch Fischer (the "Individual Defendants"); nominal defendant MRV; and plaintiff Jing Ke ("State Plaintiff") on behalf of himself and derivatively on behalf of MRV.

The SLC's members—Kenneth Traub and Robert Pons—are non-executive, independent directors who came to MRV years after the allegedly improper conduct that is the subject of this litigation and years after this action was filed. That the SLC is independent and disinterested has not and cannot be disputed.

The SLC, along with its independent counsel, WilmerHale, conducted an independent, good faith investigation of the factual and legal circumstances surrounding the lawsuit. As a result of this investigation, the SLC concluded that resolving the derivative litigation based on the terms of the present settlement, including corporate governance reforms that have been and will be implemented by MRV, would be in the best interests of MRV and its stockholders. (Decl. of Kenneth Traub in Support of Special Litigation Committee of The Board of Directors of MRV Communications Inc.'s Response in Support of Plaintiff's Motion for Preliminary Approval of Derivative Settlement (hereinafter "Traub Decl.") at ¶26-7; Decl. of Robert Pons in Support of Special Litigation Committee of The Board of Directors of MRV Communications Inc.'s Response in Support of

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1 | Plaintiff's Motion for Preliminary Approval of Derivative Settlement (hereinafter
2 | "Pons Decl.") at ¶25-6).

3 |      The SLC also believes that the proposed settlement, and each of its terms,
4 | comports with the applicable standard for approval of a derivative settlement under
5 | controlling Ninth Circuit law, namely, that "the settlement, taken as a whole, is
6 | fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.*
7 | Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

8 |      Accordingly, in addition to the reasons stated by the Federal Plaintiffs, the
9 | motion for preliminary approval should be granted because the SLC has concluded
10 | that the derivative settlement, and each of its terms, is in the best interests of MRV
11 | and its stockholders.

12 |
13 | **FACTUAL BACKGROUND**

14 | **I.**    **First Special Committee Investigation**

15 |      On June 1, 2008, the MRV Board of Directors appointed a Special
16 | Committee (the "First Special Committee") to conduct an investigation into the
17 | Company's historical stock option practices and certain accounting issues. (Pons
18 | Decl. at ¶10; Traub Decl. at ¶11 ).  On June 5, 2008, MRV issued a press release
19 | announcing the formation of the First Special Committee and stating that the
20 | Company had recently discovered information concerning the Company's stock
21 | option accounting practices from 2002 through the first quarter of 2004.  In the
22 | press release, the Company stated that it expected to restate financial statements for
23 | the years 2002 through 2008. (Pons Decl. at ¶10; Traub Decl. at ¶11).  The present
24 | stockholder derivative lawsuit was filed days after the press  release, on June 10,
25 | 2008.  A separate stockholder derivative lawsuit was filed in California state court
26 | on July 3, 2008.

27 |      After issuing the June 5, 2008 press release, the First Special Committee
28 |

– 2 –

1   retained the law firm Proskauer Rose LLP and the forensic accounting firm
2   PricewaterhouseCoopers LLC to assist in its investigation into the Company's
3   historical stock option practices. (Pons Decl. at ¶11; Traub Decl. at ¶12). For the
4   remainder of 2008, the First Special Committee conducted an intensive
5   investigation that included witness interviews, review of documents, and forensic
6   analysis. The investigation focused on the period January 1, 1998 through May 31,
7   2008. (Pons Decl. at ¶12; Traub Decl. at ¶13).

8          On February 2, 2009, the Company issued a press release announcing the
9   principal findings of the First Special Committee investigation. (Pons Decl. at ¶13;
10  Traub Decl. at ¶14). The Company announced that the First Special Committee
11  found, *inter alia*, that many pre-2004 option grant dates and grant prices were
12  retrospectively selected in a manner that was inconsistent with the Company's
13  option plans. (*Id.*) The First Special Committee also determined that the Company
14  implemented improved stock option controls beginning in March 2004. (Pons
15  Decl. at ¶14; Traub Decl. at ¶15). The First Special Committee made a number of
16  corporate governance recommendations, which were adopted. (*Id.*)   These
17  included hiring new independent directors, recruiting a new president, hiring an
18  internal auditor, and engaging an outside stock plan administrator. (*Id.*)

19  **II.    Financial Restatement**

20         On October 8, 2009, the Company announced the financial restatement
21  anticipated in the June 5, 2008 press release. (Pons Decl. at ¶15; Traub Decl. at
22  ¶16). The Company announced that, with the assistance of outside advisors, it had
23  reviewed its option granting history for the period February 23, 1994 to May 1,
24  2008. (*Id.*)  This review resulted in an additional non-cash, pre-tax share-based
25  charge, net of forfeitures, of $74.4 million for the years 1994 through 2007. (*Id.*)

26  **III.   Formation of the SLC**

27         On November 8, 2011, the Board of Directors formed the present SLC to

28

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  review the pending derivative litigation and make appropriate recommendations

2  with regard to how the company should respond to that litigation. (Pons Decl. at

3  ¶16; Traub Decl. at ¶17). The MRV Board of Directors delegated to the SLC the

4  full and exclusive authority to investigate, review, analyze and evaluate the facts

5  and circumstances that are the subject of the stockholder derivative litigations, as

6  well as any facts and circumstances relating to the Company's historical stock

7  option granting practices. (Pons Decl. at ¶18; Traub Decl. at ¶19). The SLC was

8  also delegated the full and exclusive authority to recommend and take any action

9  on behalf of the Company, consistent with Delaware law and the Company's

10 governing documents, that is or would be in the best interests of the Company and

11 its stockholders. (*Id.*) This authority included, among other things, the power to

12 negotiate and engage in discussions, negotiations, suits, settlements and other

13 actions with all parties to the federal and state stockholder derivative litigations,

14 party-appointed mediators, and the Company's insurance carriers that the SLC in

15 its business judgment determined to be in best interests of the Company and its

16 stockholders. (*Id.*)

17      At all times, the members of the SLC have been independent MRV directors

18 who were not defendants in any of the derivative litigation. (*See* Pons Decl. at ¶¶

19 8, 19; Traub Decl. at ¶¶ 9, 20). The original members of the SLC were Charles

20 Gillman, Joan Herman, and Robert Pons. (Pons Decl. at ¶19; Traub Decl. at ¶20)

21 Subsequently, Ms. Herman left the Board and in May 2012, the MRV Board

22 selected Glenn Tongue and Kenneth Traub to serve on the SLC alongside Messrs.

23 Gillman and Pons. (*Id.*) Mr. Gillman left the MRV Board in or about June 2012.

24 (*Id.*) In or around September 2012, the MRV Board determined that the SLC

25 would consist solely of Messrs. Pons and Traub. (*Id.*)

26      Mr. Traub joined the Board of Directors in October 2011. (Traub Decl. at

27 ¶8). He is Chairman and serves on the Audit, Compensation, and Nomination &

28

- 4 –

1    Governance Committees. (*Id.* at ¶1). Since 2009, Mr. Traub has been President
2    and CEO of Ethos Management LLC, which specializes in investing in and
3    advising undervalued companies to execute strategies and build and unlock
4    shareholder value. (*Id.* at ¶6). From 1999 until 2008, he served as President and
5    CEO of American Bank Note Holographics, Inc. ("ABNH"), a leading global
6    supplier of optical security devices. (*Id.* at ¶4). In 2008, Mr. Traub was Vice
7    President of JDS Uniphase Corp., a global leader in optical technologies and
8    telecommunications that had acquired ABNH. (*Id.* at ¶5). From 1994 to 1998, Mr.
9    Traub served as Executive VP and CFO of Voxware, Inc., a pioneer in Internet
10   communications technologies which he cofounded. (*Id.* at ¶3). In addition to
11   MRV, Mr. Traub serves on the board of directors for five companies: iPass, Inc.,
12   Athersys, Inc., DSP Group, Inc., TIX Incorporated, and Vitesse, Inc. Mr. Traub
13   has also served as Chairman of the board of directors of privately held Omnego,
14   Inc. (*Id.* at ¶7). Mr. Traub received his bachelor's degree from Emory College and
15   an MBA from Harvard Business School. (*Id.* at ¶2.)

16       Mr. Pons joined the Board of Directors in October 2011. (Pons Decl. at ¶7).
17   He is Vice Chairman and serves on the Audit, Compensation, and Nomination &
18   Governance Committees. (*Id.* at ¶1). Mr. Pons has over 30 years of senior level
19   management experience with early stage ventures and Fortune 500 and turnaround
20   companies, much of it in the communications sector. (*See id.* at ¶¶2, 4-6). Mr.
21   Pons is the chairman of Livewire Mobile, Inc., a comprehensive digital content
22   solutions company for carriers, handset manufacturers and media companies in the
23   mobile content market. (*Id.* at ¶6.) Prior to his position at Livewire, from 2008 to
24   January 2011, Mr. Pons was senior vice president of capital markets for The
25   Management Network Group, a provider of professional services to the converging
26   communication media and entertainment industries and the capital formation firms
27   that support them. (*Id.* at ¶5). From 2003 to 2007, he was chief executive officer

28

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  of Uphonia/SmartServ, Inc., a publicly-traded firm in the wireless industry which
2  was recapitalized and repositioned under his leadership. (*Id.* at ¶4).  In addition to
3  MRV, Mr. Pons  serves on the board of directors for two companies: Concurrent
4  Computer Corporation and Primus Telecommunications Group. (*Id.* at ¶6).  Mr.
5  Pons received his bachelor of arts degree, magna cum laude, from Rowan
6  University, and holds a patent on enhancement of 9-1-1 systems. (*Id.* at ¶¶ 2-3).

7  At the time the SLC was formed, only one MRV director was a named
8  defendant in the stockholder derivative litigation.   Currently, none of the
9  Company's directors is a defendant in this litigation. (Pons Decl. at ¶17; Traub
10  Decl. at ¶18).

11  On November 17, 2011, the Company filed a motion to stay the federal
12  derivative lawsuit pending resolution of the SLC's investigation.  The Court denied
13  the Company's motion in an opinion dated December 22, 2011.  Thereafter, the
14  SLC retained Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") as
15  counsel and began an investigation to determine how the Company should respond
16  to the derivative litigation. (Pons Decl. at ¶20; Traub Decl. at ¶21).

17  **IV.    The SLC Investigation**

18  Working with WilmerHale, and at the direction of Messrs. Pons and Traub,
19  the SLC began its investigation into the facts and circumstances of the Company's
20  stock option program in or about May 2012. (Pons Decl. at ¶20-21; Traub Decl. at
21  ¶21-22).  The SLC investigated the strength of the legal claims asserted against the
22  individual defendants and potential legal obstacles to recovery. (Pons Decl. at ¶21;
23  Traub Decl. at ¶22).  It conducted a detailed legal and factual analysis of each
24  claim asserted against each named defendant. (*Id.*)  The SLC and WilmerHale met
25  frequently via teleconference to discuss the investigation's findings, its status and
26  to address legal and factual issues. (*Id.*)

27  The factual investigation conducted by the SLC drew on the work that had

28

- 6 –

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  been undertaken and generated by the First Special Committee investigation and
2  the subsequent forensic analysis relied on for the Company's restatement of its
3  financials.  (Pons Decl. at ¶22; Traub Decl. at ¶23).  The SLC focused its fact
4  investigation on aggregating and analyzing the results of the prior inquiries and
5  conducting new inquiries into issues that required further exploration. (*Id.*)

6          To this end, WilmerHale conferred with firms retained by the Company and
7  the First Special Committee; and collected and analyzed information, documents
8  and work product from the First Special Committee investigative team, the
9  Company, and the Company's outside counsel. (Pons Decl. at ¶23; Traub Decl. at
10  ¶24).  These materials included the following:  all Company Board minutes from
11  2008 to the present; relevant Company press releases and SEC filings; key
12  historical documents, including email correspondence, memoranda, option grant
13  material, and stock option plans identified in the First Special Committee
14  investigation; work product memoranda of witness interviews conducted by the
15  Special Committee; work product memoranda prepared by the Company and its
16  advisors to guide the Company's restatement; option grant and exercise data
17  prepared by PricewaterhouseCoopers LLC based on work performed in connection
18  with the Special Committee investigation and the restatement; and option grant and
19  exercise data maintained in the Company's stock option database. (*Id.*)

20          The SLC also reviewed corporate governance reforms that had occurred at
21  the Company and explored additional corporate governance reforms that could
22  further improve the strong governance framework the Company developed in
23  recent years. (Pons Decl. at ¶24; Traub Decl. at ¶25).

24  **V.      Conclusions of the SLC**

25          As a result of its investigation, the SLC determined that the interests of the
26  Company and its stockholders would be best served by resolving this stockholder
27  derivative litigation on the terms reflected in the Stipulation of Settlement rather

28

– 7 –

than allowing the litigation to continue indefinitely with an uncertain outcome. (Pons Decl. at ¶25; Traub Decl. at ¶26).  The SLC based this conclusion on its analysis of the factual evidence and law that would support the claims and defenses asserted in the derivative lawsuits.  (*Id.*)

To that end, the SLC engaged in extensive negotiations with all parties to the federal and state stockholder derivative litigations, party-appointed mediators and the Company's insurance carriers.  (Pons Decl. at ¶26; Traub Decl. at ¶27).  The Stipulation of Settlement before this Court is a direct result of these negotiations. (*Id.*) The terms of the Stipulation of Settlement include important corporate governance reforms.  (*Id.*)

During the course of this litigation, the Company has implemented and agreed to implement corporate governance changes in response to the proposals of plaintiffs' counsel. (Pons Decl. at ¶27; Traub Decl. at ¶28).  By way of illustration, the Company's current Board of Directors and executive management team consist entirely of directors and executives that had no connection to the Company during the time period covered by the pending litigation. (*Id.*)  The SLC concluded that additional corporate governance measures would provide additional benefits to the Company and its stockholders.  (*Id.*)  The reforms implemented by the Company along with those additional reforms recommended by the SLC are reflected in Exhibit 1 to the Stipulation of Settlement.

## **ARGUMENT**

### I.     The SLC Is Empowered to Manage this Litigation

MRV is a Delaware corporation. And Delaware courts have long recognized that a Delaware corporation may rely upon a special litigation committee to reach a considered conclusion as to what course of action is best calculated to protect and to advance the interests of the corporation with respect to a purported derivative claim. *See, e.g., Zapata Corp. v. Maldonado*, 430 A.2d 779, 785 (Del. 1981).  The

– 8 –

procedures for the establishment and conduct of a special litigation committee are well settled under Delaware law. *See, e.g., Zapata*, 430 A.2d at 785-89; *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984). The board of directors begins the process by appointing a committee of disinterested, independent directors to review the allegations of the complaint and to make a recommendation as to the complaint and its allegations of injury to the corporation.

MRV's creation of and delegation of authority to the SLC is in complete harmony with Delaware law. The derivative actions were brought by stockholders on behalf of MRV. At a time when one MRV director was a named defendant, the Board created the SLC as an independent, objective body to review the claims and determine how to proceed. The Board created the SLC with only independent directors as members. It empowered the SLC to review the matters raised in the derivative litigations and determine how the Company should respond. The SLC was further empowered to take any action with respect to the derivative litigations that it deemed in the best interests of the Company and its stockholders.

The SLC executed its charge through an extensive review of the derivative claims and the facts and circumstances underlying those claims. After its review, it determined that it would be in the Company's best interests to encourage settlement of the derivative lawsuits on terms favorable to the Company. As a result, the SLC accepted, on behalf of the Company, the Stipulation of Settlement before this Court.

## II. The SLC Is Independent and Acted in Good Faith

An SLC is independent if its members are "in a position to base [their] decision on the merits of the issue rather than . . . .extraneous considerations or influences." *Kaplan*, 499 A.2d at 1189.

Courts generally examine six factors to determine whether a special litigation committee's members are independent: first, whether the directors are

-- 9 --

1  defendants and/or have potential liability in the derivative action; second, whether
2  the directors participated in or approved of the alleged wrongdoing; third, the
3  directors' past or present business dealings with the corporation; fourth, the
4  directors' past or present business or social dealings with the individual
5  defendants; fifth, the number of directors on the special litigation committee; and
6  sixth, the "structural bias" of the special litigation committee. *In re Oracle Sec.*
7  *Litig.*, 852 F. Supp. 1437, 1441 (N.D. Cal. 1994); *Johnson v. Hui*, 811 F. Supp.
8  479, 486 (N.D. Cal. 1991).  In assessing these factors, the Court need only satisfy
9  itself that the members of the special litigation committee are capable of reaching
10  an objective conclusion. *See id.*

11        Under these factors, there is no doubt that Messrs. Traub and Pons, the two
12  members of the SLC, are independent.  Neither is a defendant or has potential
13  liability in this litigation. (Pons Decl. at ¶8; Traub Decl. at ¶9).  Neither is alleged
14  to have participated in any of the alleged wrongdoing and, indeed, neither joined
15  MRV's Board of Directors until years after the alleged wrongdoing ceased and
16  after this action was filed. (Pons Decl. at ¶7; Traub Decl. at ¶8).  Apart from their
17  service as directors of MRV, neither Mr. Traub nor Mr. Traub has had business or
18  social dealings with the corporation or with the individual defendants that would
19  give rise to a conflict of interest. (Pons Decl. at ¶9; Traub Decl. at ¶10).  As to the
20  fifth factor, courts routinely hold that a two-person committee is sufficient and,
21  indeed, have even endorsed one-person committees. *See, e.g., Kaplan*, 484 A.2d at
22  512.

23        Moreover, the MRV SLC has no "structural bias" that would taint its
24  investigation or conclusions.  Courts consider whether the "manner in which the
25  SLC was appointed and proceeded was one which was inevitably bound to be
26  empathetic to defendants, and, therefore, biased in favor of terminating the
27  litigation." *Johnson*, 811 F. Supp. at 486.  Here, Messrs. Traub and Pons joined

28                                                    - 10 –

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  MRV years after the alleged wrongdoing.  Only one named defendant remained
2  associated with the company, and his tenure on the Board of Directors ended in
3  October 2012.   The Board of Directors granted the SLC full and exclusive
4  authority to conduct an independent, thorough investigation and to take any actions
5  it deemed in the best interests of MRV and its stockholders to pursue or resolve the
6  claims asserted in the derivative actions.  The SLC has conducted its investigation
7  and reached its conclusions without any interference by the individual defendants.
8  It has been assisted by independent counsel, WilmerHale, which had no affiliation
9  with any of the individual defendants and at all times acted on behalf of the SLC.
10      In addition, the SLC acted in good faith and conducted a thorough
11  investigation.  As set forth above, the SLC, with the assistance of independent
12  counsel, engaged in extensive review of documents and work product generated
13  from prior investigations relating to the alleged backdating of stock options.  The
14  SLC held numerous meetings with counsel to address the legal and factual findings
15  of the investigation and assess a multitude of courses of action with respect to the
16  derivative litigations.   The SLC was deeply involved in all aspects of the
17  investigation and at all times sought to pursue a course of action in the best
18  interests of MRV and its stockholders.
19
20
21
22
23
24
25
26
27
28

- 11 -

**MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

### III.   The SLC's Conclusion that the Stipulation of Settlement, and Each of its Terms, is in the Best Interests of MRV and its Stockholders is Reasonable

Under applicable Ninth Circuit standard, as set forth in the Federal Plaintiffs' memorandum, the Court must exercise discretion in reviewing "a private consensual agreement negotiated between the parties to a lawsuit," and should limit its review "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F. 2d at 625.   The SLC has concluded that the proposed settlement, and each of its terms, meets this standard.

The SLC's recommendations to settle the derivative suit, implement further corporate governance reforms and endorse Federal Plaintiffs' motion for preliminary approval of the settlement are eminently reasonable and are the direct result of the independent factual and legal investigation conducted by SLC with the assistance of WilmerHale.

The SLC determined that continued litigation would be costly and the results uncertain.   In contrast, the SLC was able to recommend terms of a settlement that provide the Company and its stockholders with certainty.   As set forth in the Stipulation of Settlement, the Company will receive $2.5 million in cash from its director and officer liability insurers.   In addition, the Company will achieve cost savings from the avoidance of future legal expenses, including advancement of fees to indemnified defendants and the Company's own legal fees in its capacity as a nominal party to the derivative litigation.   The SLC believes the financial benefit to the Company will be meaningful and will enable the Company to focus its resources exclusively on its operations, without the uncertainty of protracted litigation.

The SLC also determined that many of the corporate governance reforms it

MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   would have recommended, including changes to the Company's stock option

2   granting program and to personnel, had already been implemented by the

3   Company.   This was a factor weighing in favor of the SLC's conclusion to resolve

4   the derivative actions.   The SLC made additional recommendations for corporate

5   governance reforms that the Company is already in the process of implementing.

6   The SLC believes that the derivative litigation has, in this particular case, proven

7   an effective mechanism for achieving these results.

8                                               **CONCLUSION**

9           For the reasons stated above, the SLC respectfully requests that the Court

10   grant Plaintiffs' Motion for Preliminary Approval of Derivative Settlement.

11

12                                               Respectfully submitted,

13   Dated: March 21, 2013

14

15                                   By: _____

16                                        David C. Marcus
                                          Christopher T. Casamassima
17                                        WILMER CUTLER PICKERING
                                               HALE & DORR LLP
18

19                                        *Attorneys for the Special Litigation*
                                          *Committee of the Board of Directors of*
20                                        *MRV Communications, Inc.*

21

22

23

24

25

26

27

28                                          – 13 –
     **MRV SLC'S MEMO ISO OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**