1

2                                                                    **LINK: 298**

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

10                                    )
                                      )
    IN RE MRV COMMUNICATIONS,         )   **Case No. CV 08-03800 GAF (MANx)**
11  INC. DERIVATIVE LITIGATION        )
                                      )
12                                    )   MEMORANDUM & ORDER
                                      )   REGARDING MOTION FOR FINAL
13                                    )   APPROVAL OF DERIVATIVE
                                      )   SETTLEMENT AND AWARD OF
14                                    )   ATTORNEYS' FEES
                                      )
15                                    )
                                      )
16                                    )
                                      )
17  _____  )

18
                                  **I.**

19
                        **INTRODUCTION & BACKGROUND**

20
          This consolidated shareholder derivative action arises out of alleged option
21
    backdating practices by a number of high-ranking officers and directors of MRV
22
    Communications, Inc. ("MRV" or the "Company").  After "contentious, hard-fought"
23
    litigation and "arm's-length negotiations with the substantial assistance of mediators,"
24
    Plaintiffs Warren Rubin and Donald Gautreaux ("Federal Plaintiffs"), on behalf of
25
    themselves and derivatively on behalf of MRV, Plaintiff Jing Ke ("State Plaintiff") on
26
    behalf of himself and derivatively on behalf of MRV, the Individual Defendants, and
27
    nominal party MRV entered into a Stipulation of Settlement (the "Proposed
28

Settlement") of this action.  (Docket No. 299 [Motion for Final Approval of Derivative Settlement ("Mem.")]; Docket No. 284 [Settlement Agreement].)

Under the terms of the Settlement Agreement, MRV's "D&O liability insurers shall pay $2.5 million in cash to MRV within five business days after entry of the Final Order and Judgment."  (Mem. at 3 (citing Proposed Settlement ¶ 2.2).)  In addition, the Settlement contemplates that MRV will implement or maintain a number of corporate governance enhancements, including:

> (i) enhanced stock option granting and documentation procedures and policies; (ii) the forfeiture of bonuses for failure to comply with financial reporting requirements; (iii) enhanced reporting on the adequacy of internal controls; (iv) additional duties of the Audit Committee of the Board of Directors (the "Board"); (v) a policy for whistleblowers; (vi) the creation of an in-house counsel position at MRV to provide oversight over option granting practices; (vii) the engagement of a third-party provider of Internal Audit and Sarbanes-Oxley ("SOX") services; and (viii) director education requirements.

(Id.)  Finally, "MRV has agreed that Plaintiffs' Counsel be paid $500,000 in cash and freely tradable warrants to purchase 250,000 shares of MRV's common stock, with a strike price equal to the closing price of MRV's common stock on the date on which the Judgment approving the Settlement becomes final."  (Id. at 4 (citing Proposed Settlement ¶ 5.1))

On April 8, 2013, this Court preliminarily approved the Proposed Settlement. (Docket No. 289 [4/8/13 Order].)  And "[o]n April 11, 2013, . . . the Company caused the [Proposed Settlement] and Long Form Notice to be filed as an attachment to a Form 8-K filed with the SEC."  (Mem. at 14.)  The Long Form Notice was also published on MRV's website.  (Id.)  "In addition, the Short Form Notice of Proposed Settlement was published in *Investor's Business Daily* on April 16, 2013."  (Id.)  The Notices "advised the Company's shareholders of the pendency of this Action and the terms of the

1    Settlement, including the amount of the fees and expenses to be paid to Plaintiffs'

2    Counsel, subject to Court approval." (Id.)  The Notices "also advised shareholders of

3    the deadline by which comments to any of the terms of the Settlement had to be filed

4    with the Court and served on counsel." (Id.)  The deadline for filing any objections to

5    the Proposed Settlement—May 27, 2013—has since passed and "Plaintiffs are not

6    aware of a single objection to any aspect of the Settlement." (Docket No. 304 [Reply in

7    Support of Motion for Final Approval of Derivative Settlement ("Reply")] at 1.)

8    Plaintiffs now move for final approval of the Settlement Agreement.  (Mem. at 1.)  In

9    addition, Plaintiffs seek approval of the separately-negotiated attorneys' fees and

10   expenses award.  (Id. at 15.)  Plaintiffs' motion is unopposed.

11          For the reasons explained in greater detail below, the Court **GRANTS** the

12   motion for final approval of the Settlement Agreement, as well as for approval of the

13   attorneys' fees and expenses award.

14                                   **II.**

15                            **DISCUSSION**

16   **A. MOTION FOR FINAL APPROVAL OF SETTLEMENT**

17          **1. LEGAL STANDARD**

18          Federal Rule of Civil Procedure 23.1(c) requires court approval of a settlement

19   of a derivative action.  Fed. R. Civ. P. 23.1(c).  Although there does not appear to be

20   any Ninth Circuit authority directly on point, approval of a derivative action appears to

21   be a two-step process, similar to that employed for approving class action settlements,

22   in which the Court first determines whether a proposed settlement deserves preliminary

23   approval and then, after notice of the settlement is provided to class members,

24   determines whether final approval is warranted.  See Maher v. Zapata Corp., 714 F.2d

25   436, 448–50 (5th Cir. 1983); see also Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,

26   221 F.R.D. 523, 525 (C.D. Cal. 2004).  A court should approve a settlement pursuant to

27   Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."

28   Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation

marks omitted); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Circuit law teaches that, in the analogous class action context, the Court must balance the following factors to determine whether a settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026. Because this case is a derivative action, rather than a class action, the Court will disregard the third Torrisi factor for purposes of this analysis. The Court will also disregard factor seven, as there is no governmental participant in this action. And finally, with respect to the eighth Torrisi factor, the Court will examine the reaction of the shareholders to the proposed settlement rather than the reaction of "class members." Notably, the Torrisi factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. Torrisi, 8 F.3d at 1376. In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 525–26 (citing Torrisi, 8 F.3d 1376). And in addition to weighing the Torrisi factors, the Court must conclude that the Proposed Settlement is "not [] the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458. "The involvement of experienced [] counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery

ha[s] taken place create a presumption that the agreement is fair." Linney v. Cellular Alaska P'ship, Nos. C-96-3008, C-97-0203, C-97-0425, C-97-0457, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

### 2. APPLICATION OF TORRISI FACTORS

#### a. Strength of Plaintiffs' Case

Plaintiffs urge that although they "believe the claims asserted in this Action were meritorious, liability was by no means a foregone conclusion." (Mem. at 10.) Most notably, "[t]he Individual Defendants argued in their respective motions to dismiss that Plaintiffs had failed to plead their federal and state claims against Individual Defendants, and had Plaintiffs continued to litigate their claims against the Individual Defendants, there was a risk that they would not have been successful on one or more motions for summary judgment, or other pre-trial motions, filed by the Individual Defendants." (Mem. at 10 (citing Declaration of James I. Jaconette ("Jaconette Decl.") ¶¶ 55–62).) Specifically, Plaintiffs explain that "the Individual Defendants would have asserted that at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of MRV and its stockholders, the option grants alleged to have been backdated were innocuous, and that any discrepancies in option granting documentation were due to innocent administrative delays in processing this documentation." (Jaconette Decl. ¶ 60.) "Moreover, the Individual Defendants would likely have challenged the statistical analyses performed by Plaintiffs at either summary judgment or trial." (Id.)

The Court therefore agrees with Plaintiffs that "[b]ased upon the record, applicable law and practical reality, it is clear that there were serious risks in overcoming potential defenses and in establishing both liability and damages." (Mem. at 10 (citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995) (noting that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful")).) Accordingly, this factor weighs in favor of final approval of the Proposed Settlement.

1

2

### b. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

The Court has touched on this factor in discussing the strength of Plaintiffs' case above. The Court's assessment of the "risk, expense, complexity, and likely duration" prong of the <u>Torrisi</u> analysis must be balanced against the anticipated expense of litigation. <u>Nat'l Rural Telecomms. Coop.</u>, 221 F.R.D. at 526. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." <u>Id.</u> (quoting 4 A. Conte & H. Newberg, <u>Newberg on Class Actions</u>, § 11:50 at 155 (4th ed. 2002)).

This action has been litigated for more than four years by competent counsel on both sides. Without a settlement, the case would likely last far longer, and entail significant risk and expense. Substantial time and effort has already been put into this case, including arduous battles over discovery. (Mem. at 10–11.) "Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial—where witnesses could become unavailable or the fact finder could react to the evidence in unanticipated ways—and the Settlement's benefits become all the more apparent." (<u>Id.</u> at 11.)

The Settlement Agreement, in addition to minimizing delay, guarantees Plaintiffs' recovery and the implementation of substantial corporate governance reforms. Thus, the risks and potential expenses of further litigation weigh in favor of final approval, consistent with the policy preferring settlement over further time-consuming litigation. <u>Nat'l Rural</u>, 221 F.R.D. at 525–26.

### c.  The Amount Offered in Settlement

A "settlement should stand or fall on the adequacy of its terms." In re Corrugated Container Antitrust Litig., 643 F.2d 195, 211 (5th Cir. 1981).  The Court examines "the complete package taken as a whole, rather than the individual component parts," to determine whether the proposal is fair.  Officers for Justice v. Civil Svc. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982).

Under the terms of the Proposed Settlement, MRV will receive $2.5 million and, as detailed above, will benefit from the implementation and maintenance of sweeping corporate governance reforms.  (Mem. at 9.)  The Court concludes that, on the whole, the terms of the settlement are fair and weigh in favor of granting final approval.  In particular, the Court recognizes that "Plaintiffs and their counsel have achieved important benefits for the Company in terms of the adoption of a comprehensive set of corporate reforms, which are at the leading edge of corporate governance reforms and directly address Plaintiffs' allegations in the Amended Complaint."  (Mem. at 9 (citing Proposed Settlement, Ex.1; Jaconette Decl. ¶¶ 42–55).)

### d.  The Extent of Discovery Completed and the Stage of the Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." In re Cylink Sec. Litig., 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003).  Nevertheless, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)).

Here, the discovery conducted over the more than four years of litigation of this action indicates that the parties have sufficient information to make an informed decision regarding settlement.  "As a result of the parties' discussions regarding MRV's

7

document production, MRV produced over 400,000 pages of documents, including, but not limited to, extensive option granting documentation, MRV's public filings, Bylaws and Articles of Incorporation, minutes from meetings of the Board, and spreadsheets detailing MRV's stock option grants." (Jaconette Decl. ¶ 25.)   And "[t]he Individual Defendants also served extensive discovery on Plaintiffs."  (Id. ¶ 30.)  The Court is therefore persuaded that the parties had sufficient information to make an informed decision about settlement.  This factor thus weighs in favor of final approval.

### e. The Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural, 221 F.R.D. at 528 (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Furthermore, a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties. In re First Capital Holdings Corp. Fin. Prods. Secs. Litig., MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *5–6 (C.D. Cal. June 10, 1992).

"Here, counsel for the parties are seasoned practitioners in this specialized area of the law." (Mem. at 13.)  Plaintiffs' counsel "have been at the forefront of investigating alleged stock option abuses, and have been appointed lead counsel and/or involved in numerous backdating cases nationwide." (Id.)  And "MRV, acting by and through the [Special Litigation Committee], and the Individual Defendants are represented by lawyers with years of experience representing defendants in complex securities shareholder and corporate litigation." (Mem. at 13–14.)  Plaintiffs urge that "[t]hese attorneys engaged in extensive discovery and negotiations with mediators, have considered the relative strengths and weaknesses of their respective cases, and reached the agreement in the Settlement, of which the parties seek the Court's approval." (Id. at 13–14 (citing Jaconette Decl. ¶¶ 22–38, 42–45))  There is thus every indication that the negotiations and mediation were conducted at arm's length and were in no way collusive.  Accordingly, this factor also weighs in favor of granting final approval.

*f. The Reaction of Notified Shareholders to the Proposed Settlement*

"[T]he reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy." In re Rambus Inc. Derivative Litig., No. C 06–3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (citation omitted).  As noted above, the Court's April 8, 2013 Order regarding preliminary approval of the Proposed Settlement "required that any objections to the Settlement had to be filed with the Court and served on the parties no later than May 27, 2013."  (Mem. at 1.)  That deadline has passed and "Plaintiffs are not aware of a single objection to any aspect of the Settlement."  (Reply at 1.)  The Court therefore concludes that this factor weighs in favor of final approval.

### 3. CONCLUSION RE: MOTION FOR FINAL APPROVAL

Based on the above analysis, the Court concludes that, on balance, the Torrisi factors weigh in favor of granting final approval of the Settlement Agreement, because it is fundamentally fair, adequate, and reasonable.  Plaintiffs' motion for final approval of the Derivative Action Settlement Agreement is therefore **GRANTED**.

### B. MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs also seek this Court's approval of "attorneys' fees and expenses in the amount of $500,000 in cash and freely tradable warrants to purchase 250,000 shares of MRV's common stock, with a strike price equal to the closing price of MRV's common stock on the date on which the Judgment approving the Settlement becomes Final." (Mem. at 15 (citing Proposed Settlement ¶ 5.1).)

In the analogous class action context, an attorneys' fees award equal to twenty-five percent of the common fund has been established as the "benchmark" award in the Ninth Circuit.  Torrisi, 8 F.3d at 1376.  As $500,000 constitutes only twenty percent of the $2.5 million award in this case, it is likely below the Ninth Circuit's "benchmark" figure, even taking into account the freely tradable warrants to purchase 250,000 shares of MRV's common stock.  However, this "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

1  percentage recovery would be either too small or too large in light of the hours devoted to

2  the case or other relevant factors." Six Mexican Workers v. Ariz. Citrus Growers, 904

3  F.2d 1301, 1311 (9th Cir. 1990).  And the Ninth Circuit has identified a number of factors

4  relevant to determining whether a result is reasonable or whether "special circumstances"

5  exist that warrant altering the attorneys' fees award:

6          (1) the results achieved; (2) the risks of litigation; (3) the skill required and the
          quality of work; (4) the contingent nature of the fee; (5) the burdens carried by
7          class counsel; and (6) the awards made in similar cases.

8  Martin v. Ameripride Servs., Inc., 2011 U.S. Dist. LEXIS 61796, at *24 (S.D. Cal. June

9  9, 2011) (citing Vizcaino, 290 F.3d at 1048–50).

10         With respect to the first factor, Plaintiffs urge that "[a]s a result of the reforms

11  implemented by the litigation and Settlement, MRV will be protected against future

12  instances of the wrongdoing alleged in the Actions, as well as reap the benefits of greater

13  board-level accountability, independence, and transparency."  (Mem. at 17–18); see also

14  Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 395 (1970) ("[A]n increasing number of

15  lower courts have acknowledged that a corporation may receive a 'substantial benefit'

16  from a derivative suit, justifying an award of counsel fees, regardless of whether the

17  benefit is pecuniary in nature.")  And with respect to the "risks of litigation" factor, as

18  discussed above, pursuing this litigation was inherently risky, as "derivative lawsuits are

19  rarely successful."  In re Pac. Enters. Sec. Litig., 47 F.3d at 378.

20         With respect to the fourth factor—the skill required to litigate the case—the

21  successful prosecution of this action required knowledge and expertise in the fields of

22  shareholder derivative litigation and options backdating.  And the fifth factor is clearly

23  satisfied here as well, as "[t]he litigation was undertaken by Plaintiffs' Counsel on a

24  wholly contingent basis" with the understanding that "they were embarking on a

25  complex, expensive, and lengthy litigation with no guarantee of ever being compensated

26  for the investment of time and money the case required."  (Jaconette Decl. ¶ 74.)  Finally,

27  with respect to the sixth factor, Plaintiffs' Counsel avers that "[t]he fee award is

28  reasonable when compared with other options backdating litigation achieving comparable

relief in the form of corporate governance reform." (Id. ¶ 69.)  And the mediator in the case concurs, urging that "the separately negotiated attorneys' fees and expenses agreement was negotiated in good faith and is fair and reasonable and within the range of fees paid in similar shareholder derivative cases." (Declaration of Jed. D. Melnick ("Melnick Decl.") ¶¶ 9–10.)   The Court therefore concludes that the amount requested for attorneys' fees and expenses is reasonable and that no special circumstances exist warranting alteration of the award.  The Court therefore **GRANTS** Plaintiffs' motion for approval of the attorneys' fees and expenses award.

## IV.

### CONCLUSION

Accordingly, Plaintiffs' Motion for Final Approval of Derivative Settlement is **GRANTED**.  Plaintiffs' motion for approval of the attorneys' fees and expenses award is also **GRANTED**.   Plaintiff is to file a Proposed Judgment consistent with this order by the close of business on **June 13, 2013**.  The hearing set for Monday, June 10, 2013 is **VACATED**.

**IT IS SO ORDERED.**

DATED: June 6, 2013

_____
Judge Gary Allen Feess
United States District Court